JENTZER v. VISCOSE CO. et al.
No. 32.

Circuit Court of Appeals, Second Circuit.
Feb. 10, 1936.

Maxwell S. Mattuck, of New York City, for plaintiff.

Spencer, Ordway & Wierum, of New York City (John A. McManus, Samuel H. Ordway, Jr., and Roderick B. Travis, all of New York City, of counsel), for defendants.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is a suit in equity to recover a preference made by the bankrupt, the Yarns Corporation of America, to the defendant, the Viscose Company. Only two questions are involved: First, whether a payment on account is a preference if, when made, it is no more than the dividend which would then be recoverable on the whole claim; second, whether the Viscose Company had reasonable cause to suppose that the payment would effect a preference. The defendant Le Roy was joined because he acted as a trustee for the Viscose Company in disposing of the assets transferred. The bankrupt for many years had been an outlet for the products of the Viscose Company, but it had fallen far behind in its payments so that at the beginning of the year 1931 it owed $319,000, even after the Viscose Company had written down the account to that figure from over $500,000.

In 1928 it had issued $250,000 of bonds, which were secured by a mortgage upon all its plants; this issue stood at $244,000 in 1931. The Viscose Company, being concerned as to the collectibility of the account as reduced, in January of 1931 shut off the bankrupt's further credit and thus stopped its business for it could get no credit elsewhere. The bondholders thereupon became much concerned and wished to effect some compromise so that the company could start again. After negotiation with Law and Blackford, acting for the bondholders, the Viscose Company agreed to compromise the whole remaining claim for $75,000 if it were paid within ninety days. It is not necessary to consider whether this would have constituted a valid release or not, for the agreement was never performed, the bankrupt being unable to raise the cash. Thereupon on June 3 a second agreement was made by which the bankrupt turned over all its free assets to Le Roy except some accounts against the Romney Fabrics Company, a wholly owned subsidiary, on the agreement that if Le Roy should collect $75,000, the whole debt would be forgiven; otherwise the collections should be applied on account. The free assets consisted of the bankrupt's stock of merchandise, its accounts receivable, some of which had been pledged, and an interest in two real estate syndicates which it had received from its officers after it began to get into trouble. Le Roy liquidated these assets by the following September, the total amount received being about $15,000, so that the terms of the agreement were never fulfilled. It is this $15,000 which is the subject of the suit, together with some surcharges which we defer for the moment.

The Viscose Company had been told that the bankrupt's unsecured indebtedness other than its own was trifling; it was in fact only $11,000, and we are content to disregard it and to assume with the judge that the only important issue was as to their notice of a possible deficiency under the mortgage. The value of the mortgaged property is in dispute. The defendants called as witnesses some appraisers who had valued the plants as of June, 1931, as a going concern. Their figure was about $300,000, to which should be added the value of certain real property at Allentown appraised in 1927 at $36,000; after allowing for the intervening four years, we may take the total amount as about $330,000.

One of these witnesses thought that on foreclosure only about one-fifth of these values would be likely to be realized. The parties stipulated that the plaintiff's witnesses if called would appraise the plants at between $106,000 and $61,000; but it does not appear whether this was as a going business. The bondholders on foreclosure realized $62,000. The business was no longer in operation; the plant had been shut down and could not start again unless the debt to the Viscose Company was out of the way; that company had been content with less than one-fourth of even its reduced claim. In the light of all this it' would have been the merest illusion to suppose that $244,000 could be collected by any reasonable efforts; the sum actually realized was probably not far from any procurable value in June, 1931. The bondholders were acutely aware of their danger; as we have said, it was they who began the negotiations. Law and Blackford each swore that he told Caulfield of the Viscose Company that the security was not large enough, and though Caulfield denied this as to Blackford, he did not as to Law. The judge was surely right in saying that all this put the Viscose on inquiry, and that once inquiry was made it ought to have been plain that a substantial deficiency was probable; nobody who knew anything about such matters could have thought the bonds adequately protected.

■ The other question we have already decided in Re Palmenberg Sons, 76 F.(2d) 935, to which we adhere. The rule of the Eighth Circuit, Haas v. Sachs, 68 F.(2d) 623; Mansfield Lumber Co. v. Sternberg, 38 F.(2d) 614; W. S. Peck & Co. v. Whitmer (C.C.A.) 231 F. 893, is right if the creditor releases the whole claim upon receiving payment. Here for example, if the bankrupt had paid the $75,000 and the agreement of the Viscose Company had been an effective release, the test would be whether $75,000 was more than its proper dividend at the time. But both settlements broke down, and the money collected was merely paid on account; the Viscose Company was left free to demand dividends upon the balance of its claim on equal terms with the bondholders, although it had already received 100 per cent. upon a part of it. That was certainly a preference.

■ The remaining question is whether the defendants should be surcharged for their disposition of the assets transferred. Le Roy sold one lot of merchandise for $4,-

085 to the Romney Company, still a going concern though shaky; its inventory value had only been $4,372, and the price was a good one. But he sold the account to the wives of Grisman and Gross, officers of the bankrupt, for just one-half its face, and the Romney Company paid in full within a few months. On August 13 Le Roy wrote Caulfield that he understood that Caulfield wished him to collect "irrespective of value and at any sacrifice necessary to turn these assets into cash before that time" (September 1); Caulfield on August 25 expressly authorized the sacrifice of this account. It is indeed possible that Le Roy got the price from the Romney Company that he did only because Grisman and Gross were to buy the account at 50 per cent. of its face, but no such explanation is offered and on the record the sacrifice was altogether unjustified. We charge the defendant with the full value. The other merchandise received had a book value of $20,000, and Le Roy sold it to Brodner, office manager of the bankrupt, and Mrs. Gross for about $7,000. There would be no reason to challenge this sale except that the buyers .in the course of a year realized about $12,000 on it. But we should not assume that Le Roy could have sold for as good a price as Brodner who had been in the business. Besides, the goods must have 'been inferior to the first lot for they finally brought only 60 per cent. of their book value instead of over 90. The plaintiff has the burden of surcharging the account and failed as to this item.

The bankrupt carried upon its books some $98,000 of accounts of all sorts; Le Roy collected only $3,238. The only testimony is that over $71,000 of these were owed by debtors who were either bankrupt or out of business. The rest, $27,000, we know nothing about, and again the plaintiff has the burden. It is quite possible that the bankrupt had already in extremis skimmed from its receivables most that were good, certainly all that could be collected without litigation or negotiation. While there is some reason, as in the case of the Romney accounts, to suppose that the collections were too hasty, we have not as to these, as we have as to those, proof of their later collectibility. This item we will not disturb.

There was also an account on the bankrupt's books against the Textile Banking Company for $5,900 which Le Roy settled

for $1,600. About it we know very little. Le Roy thought that it was uncertain in amount—between $4,000 and $6,000—and against it the debtor set up some cross-claims to which Le Roy agreed. The payment was apparently the full amount of the balance; and we can see no reason to surcharge the defendants on this item. Finally, there was an account of $2,000 against the London Guarantee & Accident Company, which Le Roy settled for $1,100. Again we know very little about it; Le Roy let Grisman continue the negotiation for settlement and this was the result; with it we are content.

The plaintiff challenges Le Roy's claim for commissions, not on the ground that as trustee ex maleficio he was entitled to none, but because he apparently added to a commission of 5 per cent. on the money collected certain charges for his time in attendance upon the trial for the adjudication of the bankrupt. It is impossible to see on what theory that time could be on the plaintiff's account and the credit will be falsified. Commissions will be allowed on the modified recovery only because they are not challenged.

Decree modified and affirmed, with costs.