**PERKINS v. REMILLARD.**

**Civ. A. No. 8054.**

United States District Court
D. Massachusetts.

May 5, 1949.

---

[2] Senate Report No. 127, 1st Sess. 80th Cong. U. S. C. Congressional Service, 1949, p. 351.

Frank G. Lichtenstein, Boston, Mass., for plaintiff.

M. James Zelman, Boston, Mass., for defendant.

WYZANSKI, District Judge.

### Findings of Fact.

1. Continuously since August 5, 1948 Myszkowski has been insolvent and Remillard has known it.[1]

2. In the summer of 1948 Remillard sued Myszkowski in the Massachusetts state court for money owed. On the afternoon of August 5 Remillard's counsel, Schuman, put into the hands of the sheriff the writ in that action and directed the sheriff to attach on mesne process a structure belonging to Myszkowski. August 6 the sheriff attached. September 17 Remillard recovered judgment for $2,500. The state court issued execution forthwith. September 25 Remillard caused a levy to

---

[1] The detailed reasons for these statements are covered by remarks which I made from the bench (See typewritten transcript pp. 1–3) and which I leave unmodified. The findings set forth elsewhere in that transcript are superseded by these findings and this opinion.

be made of the execution on the structure. On the same day, pursuant to the levy the sheriff sold it, at a properly conducted sheriff's sale, to Remillard's agent Schuman for $2,054.50.

3. The effect of the transfer of the structure was to enable Remillard to obtain a greater percentage of his debt than any other creditor of his class.

4. October 19 this Court's referee adjudicated Myszkowski a bankrupt.

5. In November Remillard, at a cost of $60 in labor and an unascertained amount of materials, put the structure in plumb, straightened out warps, placed new frames around the windows, painted the building and fixed the rod and ridge.

6. November 9 Perkins, who was then receiver of Myszkowski's estate and is now trustee, made demand upon Schuman as representative of Remillard "for the release of any property held under * * * attachment". Before that date Schuman had ceased to act as counsel for Remillard or as his agent in connection with the structure.

7. November 12 Schuman replied that "the property referred to" was not "recoverable by a receiver or trustee in bankruptcy". November 15 Schuman wrote that "if any action is brought against Mr. Remillard, I assume he will contact me".

8. December 21 Perkins as trustee filed a complaint in this Court against Remillard setting forth substantially the facts found in the first four numbered paragraphs above. The complaint makes no reference to either the repairs found in paragraph 5 above or the demand and reply referred to in paragraphs 6 and 7. The prayer of the complaint was for a judgment for $2,054.50 (together with an item of $575 not now in dispute) "and for such other relief as this Court shall deem proper".

9. January 10, 1949 Remillard filed an answer denying that he was indebted to Perkins.

10. There was no claim of jury trial.

## Opinion

The only difficult problem in this case is whether under the 1938 amendment to the Bankruptcy Act a trustee in bankruptcy can recover from a preferred creditor the value of the property transferred when the creditor still retains the property.

The case was presented to this Court without either side having seasonably claimed a jury trial. Hence the Court had power to try the controversy in equity without a jury. Buffum v. Peter Barceloux Co., 289 U.S. 227, 235, 53 S.Ct. 539, 77 L.Ed. 1140; Adams v. Champion, 294 U.S. 231, 234, 55 S.Ct. 399, 79 L.Ed. 880.

In view of the findings set out above it is clear that as a matter of law Remillard secured a preference as defined by § 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a when the sheriff attached Myszkowski's structure on August 6. The trustee had the legal right to avoid that preference in accordance with § 60, sub. b, 11 U.S.C.A. § 96, sub. b. And the problem is whether, in the light of the other facts found, the trustee has an unfettered option to recover the value of the structure, rather than the structure itself.

Such a free option existed under the Bankruptcy Act prior to the 1938 amendment. Levy v. Rendle Contracting & Dock Bldg. Co., D.C.D. Mass., 9 F. Supp. 1009. But § 1 of the Act of June 22, 1938, c. 575, 52 Stat. 870, amended § 60, sub. b, 11 U.S.C.A. § 96, sub. b so that the trustee now has the right to recover the value of a preference only "if it has been converted." The governing sentence provides that "where the preference is voidable, the trustee may recover the property, or, *if it has been converted,* its value." 11 U.S.C.A. § 96, sub. b. The change indicated by the added emphasis was made with the intention of abolishing the old rule of unfettered election because the framers of the new act did not think the old rule of a free option was just. It gave the trustee the power to force a preferred creditor to become a purchaser. House Report No. 1409, Committee on Judiciary, July 29, 1937, pp. 30, 31; Glenn, Fraudulent Conveyances and Preferences (1940), § 419, p. 719; Hanna and McLaughlin, Cases on Creditors Rights, 3d ed., p. 733.

An initial question is whether the standard for determining whether property

"has been converted" is supplied by federal rule or by the rule of the state where the conduct occurs. Either rule would be conceivable. It does not do violence to the constitutional requirement of uniformity for a bankruptcy statute to take as the test local state law. U.S. Constitution, Article I, § 8, cl. 4. Hanover National Bank v. Moyses, 186 U.S. 181, 190, 22 S.Ct. 857, 46 L.Ed. 1113. See Vanston Committee v. Green, 329 U.S. 156, 172, 67 S.Ct. 237, 91 L.Ed. 162. But neither does it do violence to any constitutional or other requirement to construe a bankruptcy statute as taking as the standard a nation-wide federal definition. Vanston Committee v. Green, 329 U.S. 156, 162-163, 67 S.Ct. 237, 91 L.Ed. 162; City of Lincoln v. Ricketts, 297 U.S. 373, 56 S.Ct. 507, 80 L.Ed. 724; American Surety Co. v. Marotta, 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466. Between these possible alternatives there are compelling reasons for choosing a federal definition of the term "converted" as used in § 60, sub. b. What Congress aimed at was a rule which would permit the trustee to treat the preference as a forced sale only if the preferee could not return the identical property in substantially as good condition as when the bankrupt had it. This result can readily be achieved by a federal rule announced by a federal court. It cannot be achieved by incorporating by reference local state rules. For under the law of most states the doctrine of conversion would work a capricious result in bankruptcy. Sometimes it would go too far in penalizing the preferee. Thus, if the trustee made demand upon the alleged preferee for the property and the preferee in good faith refused to deliver until there had been a judicial determination of the facts, the preferee's refusal would probably be a "conversion". Hotchkiss v. National City Bank of New York, D.C.S.D.N.Y., 200 F. 287, 294-295 [where L. Hand, J. stated there would be a conversion if there were a demand], affirmed Ernst v. Mechanics' & Metals National Bank of New York, 2 Cir., 201 F. 664, affirmed, National City Bank v. Hotchkiss, 231 U.S. 50, 59, 34 S.Ct. 20, 58 L.Ed. 115 [2nd paragraph line 6 where Holmes, J. assumes a "conversion"]. See Restatement, Torts, § 237.

Cf. Land v. Dollar, 330 U.S. 731, 736, 67 S.Ct. 1009, Note 5, 91 L.Ed. 1209. At other times the state doctrine of conversion would not go far enough in allowing the trustee to regard the preferee's action as a "conversion". Thus, if before the filing of a petition in bankruptcy, when the preferee had a good but voidable right of possession and title and when there was not even a trustee in being, the preferee destroyed or sold the property, the preferee's conduct would probably not be a "conversion" of which complaint could be made by the trustee and certainly not by the consenting bankrupt. See Glenn, supra, § 421, p. 721. Put another way, there would be no liability for "conversion" where at the time defendant acted there was no other "person" entitled to either immediate or future possession. Cf. Restatement, Torts, § 243. To be sure, the preferee would be accountable to the trustee after his appointment for the fair value of property he had destroyed. McElvain v. Hardesty, 8 Cir., 169 F. 31; Irving Trust Co. v. Conte, D.C. S.D.N.Y., 22 F.Supp. 94, 95. Or, if there had been a sale, the preferee would be accountable not only for the actual proceeds of the sale, Welsch v. Palumbo, 321 Mass. 399, 403, 73 N.E.2d 844, but for such additional sum as a fair sale would have netted. Jentzer v. Viscose Co., 2 Cir., 82 F.2d 236, 238. These liabilities would arise not ex maleficio, Adams v. Champion, 294 U.S. 231, 235-236, 55 S.Ct. 399, 79 L.Ed. 880, but ex aequo et bono. Cf. Glenn, supra, § 421, p. 721. They would sound not in tort but in quasi-contract.

■ To avoid the anomalous overreach and underreach of the state or traditional common law rules of conversion and to accomplish the disclosed purpose of the Congressional legislation, the phrase "has been converted" as used in § 60, sub. b, must be given a new federal definition under which the term means "has been so dealt with that in the advent of a final adverse judgment the preferee cannot return the identical property in substantially as good condition as when the bankrupt had it".

■ Under this definition Remillard did not convert the property when he caused

the sheriff to attach or to levy execution or to sell the property to Remillard's agent Schuman. Nor did he convert when he failed to respond to the trustee's demand—even if it be assumed that the demand was made before suit and even if it be assumed that it was proper to make demand upon Schuman (because he acted for Remillard in causing the attachment, levy, sale and purchase of the structure or because he later received authority to act as Remillard's counsel in this case).

Nor did Remillard convert the property when he made the alterations which cost $60 in labor and an unascertained amount in materials. Even in the common law action of trover or its modern analog, Mass. G.L. (Ter.Ed.) c. 231, § 147, par. 11, a plaintiff would not have proved a "conversion" if he showed that the defendant made alterations which were regarded by the trier of fact as being unsubstantial. Philpott v. Kelley, 3 Ad. & El., 106, 113, 115, 117; Donovan v. Barkhausen Oil Co., 200 Wis. 194, 227 N.W. 940, 942. See Prosser, Torts, 107-108; Restatement, Torts, § 226 comment a. The reason is that to hold otherwise would unfairly put the defendant in the position of an unwilling purchaser of property which he has not damaged. The bankruptcy rule should not be more strict than the common law rule. The common law reason applies; moreover, there is a further reason. The trustee in bankruptcy—unlike an ordinary owner—can have no sentimental or personal interest in property. His only concern is to get back his bankrupt's property in as marketable and as financially valuable condition as it was when it left the bankrupt's hands. Since I find as a matter of fact that Remillard's alterations of the structure were not financially detrimental, the property has not by these alterations "been converted" within the meaning of § 60, sub. b.

There having been no conversion, plaintiff was not entitled to the $2,054.50 for which he asked judgment. He is, however, clearly entitled to a return of the building. And a decree to that end should be entered. The fact that his specific prayer asked for a money judgment does not preclude this result. Firstly, the general prayer is sufficiently broad. Secondly, Federal Rules of Civil Procedure, rule 54-(c), 28 U.S.C.A., provides that the claim for relief does not preclude the Court from giving a different and more appropriate relief. Falk v. Levine, D.C.D. Mass., 60 F. Supp. 660. Moore's 3 Federal Practice, § 54.03.

Decree for plaintiff to recover the building and also to recover $575 without interest, in accordance with parties' stipulation.