**Jerry B. KLEIN, as Trustee for the Liquidation of the Business of JNT Investors, Inc., Debtor, Plaintiff,**

v.

**Jay N. TABATCHNICK and S. Wolfe Emmer, Defendants.**

No. 74 Civ. 751.

United States District Court, S. D. New York.

Oct. 16, 1978.

See also, D.C., 418 F.Supp. 1368.

Weil, Gotshal & Manges, New York City, for plaintiff; Kevin P. Hughes, William Simon, New York City, of counsel.

Bobrow, Greenapple, Burton, Distler & Midler, New York City, for defendant Jay N. Tabatchnick; Lawrence Greenapple, New York City, of counsel.

Gibson, Dunn & Crutcher, Los Angeles, Cal., Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant S. Wolfe Emmer; Steven A. Meiers, Arthur L. Sherwood, Los Angeles, Cal., Timothy C. Quinn, Jr., New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff Jerry B. Klein ("the Trustee"), the trustee for the liquidation of the business of JNT Investors, Inc. ("JNT"), brought this action to recover the value of certain of JNT's assets allegedly transferred to defendant S. Wolfe Emmer ("Emmer") by JNT through its founder and president, defendant Jay N. Tabatchnick ("Tabatchnick"), in two transactions. The first transaction involved the transfer to Emmer by JNT in December 1971 of corporate warrants from JNT's portfolio, as security for Emmer's having collateralized a personal bank loan of Tabatchnick's in the amount of $50,000, the proceeds of which Tabatchnick invested in JNT as a subordinated loan ("the fraudulent transfer"). The second transaction, which occurred immediately before JNT was forced to cease operations in mid-February 1972, involved Tabatchnick's voiding and returning to Emmer a $100,000 check payable to JNT and drawn several days previously at Emmer's request by Andresen & Company, a brokerage house at which Emmer had an account ("the preference").

In an opinion dated September 2, 1975, the Court granted plaintiff partial summary judgment against both Tabatchnick and Emmer on plaintiff's claim that the transfer of warrants constituted a fraudulent transfer under § 67d of the Bankruptcy Act, 11 U.S.C. § 107 ("§ 67d"), since it was a transfer made within a year of the commencement of liquidation proceedings without fair consideration by an insolvent debtor.[1] The issue of damages was reserved for

---

1. Section 67d provides in pertinent part:

   (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent.

   11 U.S.C. § 107.

trial.[2] After trial, a jury found that the warrants of Charter Funding Corporation and Vicon Products Corporation had no market value on the date in question, but that the warrants of Commonwealth Silver Industries had a value of $73,750. The jury also found that the voiding and return of the $100,000 check constituted a voidable preference under § 60 of the Bankruptcy Act, 11 U.S.C. § 96 ("§ 60").[3] In addition, at the close of the evidence, the Court granted plaintiff's motion for a directed verdict in the nature of summary judgment against Tabatchnick with regard to the first transaction under New York Business Corporation Law § 720 ("B.C.L. § 720") on the theory that the Court's previous finding of a fraudulent transfer under § 67d required a finding that Tabatchnick had breached his duty to JNT under B.C.L. § 720.[4] Judgment was entered against Tabatchnick and Emmer jointly and severally in the amount of $173,750.

Emmer moves pursuant to Rules 50 and 59, Fed.R.Civ.P., for judgment notwithstanding the verdict or, in the alternative, for a new trial with regard to both the valuation of the warrants and his liability for a preference under § 60 of the Bankruptcy Act. Although Tabatchnick moves, pursuant to Rule 60, Fed.R.Civ.P., to correct the judgment with regard to his liability for a preference under § 60, the Court has considered Tabatchnick's motion also to be for judgment notwithstanding the verdict. For the reasons hereinafter stated, judgment notwithstanding the verdict is granted to Tabatchnick on the § 67d claim and to both defendants on the § 60 claim. Emmer's motion is denied insofar as he seeks judgment notwithstanding the verdict on the § 67d claim. Tabatchnick's motion, to the extent it seeks to correct the judgment as to the § 60 claim, is denied as moot.

## I. Emmer's Motion for Judgment Notwithstanding the Verdict or a New Trial

Emmer asserts numerous grounds to support his contention that he is entitled to judgment notwithstanding the verdict or at least to a new trial both as to the issue of the valuation of the Commonwealth Silver warrants and as to the finding that the second transaction constituted a voidable preference under § 60 of the Bankruptcy Act.

The standard which the Court must follow in deciding a motion for judgment notwithstanding the verdict is most stringent:

---

**2.** The parties had cross-moved for summary judgment. Because the Court agreed with the Trustee that the first transaction was a fraudulent transfer under § 67d, it denied Emmer's cross-motion, joined in by Tabatchnick, on that claim and did not address the merits of plaintiff's claims that that transaction also violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, as well as New York Business Corporation Law § 720. The Court also denied both sides' motions for summary judgment and reserved for trial plaintiff's claim that the second transaction constituted a voidable preference under § 60 of the Bankruptcy Act, 11 U.S.C. § 96.

**3.** Section 60 provides in pertinent part:

(a)(1) A preference is a transfer . . . of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

·  ·  ·  ·

(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value.

·  ·  ·

11 U.S.C. § 96.

**4.** Plaintiff's attorney indicated that although summary judgment had already been granted as to the first transaction on the theory of § 67d, he wanted another "string in our bow of legal theories" for appeal. This strategy turns out to have been most prudent in view of the Court's granting of judgment notwithstanding the verdict to Tabatchnick on the § 67d claim. See Part II, infra.

Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. [Furthermore], the evidence must be viewed in the light most favorable to the party against whom the motion is made and he must be given the benefit of all reasonable inferences which may be drawn in his favor from that evidence.

*Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir. 1970).

In passing on a motion for a new trial, the Court is bound to

. . . view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.

*Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir. 1978), *quoting* 6A *Moore's Federal Practice* ¶ 59.08[5], at 59–160—59–181 (1973) (footnotes omitted).

## A. *The Fraudulent Transfer*

While the Court determined by summary judgment that the warrant transaction constituted a fraudulent transfer under § 67d of the Bankruptcy Act, plaintiff's remedy, money damages in the amount of the market value of the transferred warrants on the date of the transfer, was reserved for trial. The jury found that two of the three sets of securities had no market value at the time of the transfer, but that the Commonwealth Silver warrants were worth $73,750. Emmer attacks the Commonwealth Silver valuation as without foundation. He also contends that a money judgment is not an appropriate remedy in this case. The Court believes that both arguments lack merit.

## 1. Foundation For Valuation

The testimony on the issue of valuation came from four sources. Emmer presented two expert witnesses at trial, Julius Rendinaro and John Crossman, who valued the Commonwealth Silver warrants at $1,000 and $1,200–$1,250, respectively. Plaintiff's expert, Robert Leopold ("Leopold") testified that, in his opinion, the warrants were worth $96,560. Plaintiff also introduced the deposition testimony of Tabatchnick, in which he stated that he believed the warrants were worth $50,000. Emmer asserts, however, that both Leopold's and Tabatchnick's testimony must be entirely disregarded. The Court does not agree.

Leopold, a partner in the investment firm of Stuart Brothers, stated that he had extensive experience in the valuation of common stocks and warrants. The witness testified that, employing a "willing buyer and a willing seller" concept, he began his valuation by taking the difference between the exercise price of the warrant and the market price of the stock on the date in question. He stated that the warrants were registered and exercisable. However, he discounted the figure arrived at by 20% based upon consideration of such factors as the number of shares in float, the restricted nature of the warrant, *i. e.,* the necessity of filing a post-effective amendment with the Securities and Exchange Commission to make either the warrant, or the underlying common stock which could be purchased by exercising the warrant, freely salable. In Leopold's view, a post-effective amendment, at the expense of Commonwealth Silver, could be obtained in three to four weeks due to that company's reasonably current year-end financials.

■ Emmer contends that there was no proper foundation for Leopold's opinion because the witness admitted that he had never read the warrants and because he relied in his valuation on a year-old prospectus which, according to Emmer, did not reflect changes in the nature of the busi-

ness which negatively influenced its financial position. The Court believes, however, that these factors did not undermine the competency of Leopold's testimony, but were merely factors to be considered by the jury in evaluating Leopold's testimony as a whole. As the Court instructed the jury, both when Emmer's attorney objected on this ground during Leopold's testimony and in its charge, the jury was entitled to consider Leopold's opinion testimony and to ascribe to it such weight as it saw fit.

■ Plaintiff also introduced the deposition of Tabatchnick on the issue of valuation. Tabatchnick testified in his deposition that, based on his experience on Wall Street, he would place the value of the Commonwealth Silver warrants at the time in question at $50,000. Emmer claims that the deposition should not have been admitted into evidence because he had no representative present at the taking of the deposition. However, at the time Emmer's attorney raised this objection at trial, he conceded that notice of the deposition had been duly served upon counsel and that no motion objecting thereto had been made. Thus, Emmer's counsel had full opportunity to attend and cross-examine, but waived that opportunity. Accordingly, his failure to appear did not affect the admissibility of Tabatchnick's deposition testimony. *See* Rule 32(a), Fed.R.Civ.P.; *Wong Ho v. Dulles,* 261 F.2d 456 (9th Cir. 1958); *Gore v. Maritime Overseas Corp.,* 256 F.Supp. 104, 119 (E.D.Pa.1966), *rev'd in part on other grounds,* 378 F.2d 584 (3d Cir. 1967). Emmer also argues that Tabatchnick's testimony is misleading in that Tabatchnick made the valuation while being questioned on the issue of insolvency. However, the jury heard the deposition testimony in full context. It was its prerogative to give the opinion as much or as little weight as it felt it warranted.

The Court thus believes that Leopold's and Tabatchnick's testimony valuing the warrants at $96,500 and $50,000, respectively, was properly placed before the jury and provided an ample basis for its verdict. Accordingly, it rejects Emmer's contention that he is entitled to judgment notwithstanding the verdict or a new trial on this issue.

### 2. Remedy Available to the Trustee

■ Although the Court has previously rejected this argument, both in its summary judgment opinion and at trial, Emmer again asserts that the only remedy available to the Trustee for the fraudulent transfer of the warrants was their return inasmuch as he, the transferee, had retained continuous possession of them.

In support of his position, Emmer cites cases which hold that a money judgment may be awarded against a transferee only when he has done some act which makes it impossible for him to return the property or has destroyed or impaired its value. However, the cited cases are not controlling in that they do not involve § 67d of the Bankruptcy Act. Even assuming, however, that the principle advocated by Emmer does apply to § 67d transfers as a general proposition, in the Court's view an exception would still be in order where, as here, the transferred property consists of securities. Implicit in the rule that only the property itself may be recovered is the notion that, absent the unforeseeable, the property will retain its initial value if not destroyed or impaired by the transferee. This premise is not true as to securities, which, by their very nature, are subject to great fluctuations in value and which, therefore, cannot be expected, even under normal circumstances, to be as valuable upon return as upon their initial transfer. Moreover, as the Court indicated when Emmer tendered the warrants at the time of trial, it might have considered the matter differently had Emmer returned the warrants upon the Trustee's initial demand. However, Emmer refused to do so at that time, holding them instead for some five years, waiting to see which way the wind would blow and tendering them to plaintiff only after they had lost all market value. To restrict the Trustee's remedy to the return of the warrants under these circumstances would clearly be inequitable.

The Court has considered Emmer's additional arguments with regard to this issue and finds them to be without merit. Therefore, it reaffirms its prior rulings that a money judgment is an appropriate remedy for this claim.

## B. *The Preference*

Emmer also asserts numerous grounds for the granting of judgment notwithstanding the verdict or a new trial with regard to the jury's finding that the voiding and return to Emmer of an unnegotiated $100,000 check, payable to JNT and drawn at Emmer's request, constituted a voidable preference under § 60 of the Bankruptcy Act. For the reasons set forth below, the Court believes that, for the most part, Emmer's arguments lack merit. However, based upon an argument addressed by the parties in the summary judgment motions, the Court has concluded that the voiding and return of the unnegotiated check could not, as a matter of law, be a preference and that, therefore, judgment notwithstanding the verdict should be entered on the preference claim as to both Emmer and Tabatchnick.

### 1. The $100,000 Check did not Name Emmer nor was it Signed by Him

Emmer first contends that he cannot be liable on the check because the check was not signed by him and did not name him on its face. The shortest answer to this argument is that Emmer was not held liable on the check, but on the preference he allegedly received when JNT destroyed and/or returned the check to him. Whether Emmer signed or was named on the check is immaterial to the issue of preference. All § 60 requires in this regard is that Emmer have been a creditor of JNT's on account of an antecedent debt.[5]

Emmer seems to argue that the Trustee never proved that he was a creditor of JNT because he failed to demonstrate that the check was signed by an agent of Emmer's. Although the drawer of the check was Andresen & Company, not Emmer, and although an issue was raised as to whether the intended payee of the check was JNT or Tabatchnick personally, the evidence at trial was overwhelming that Andresen & Company was acting as Emmer's agent when it signed the check, and that, consequently, it was Emmer who was the creditor on account of the giving of the check to JNT. In fact, much of the evidence on this issue came from Emmer himself. For example, Emmer's counsel in his opening statement recounted that "Dr. Emmer agreed to loan Mr. Tabatchnick personally $100,000 and asked another stockbroker where he had an account to provide Mr. Tabatchnick that $100,000." Emmer also testified on direct examination that after telling Tabatchnick he would lend him $100,000, he called Andresen & Company and told them to make out a check to Tabatchnick for whatever he requested and that he subsequently received a note from Andresen saying that they had made out a check to JNT. The record is replete with additional evidence in this regard. Accordingly, the Court concludes that this argument is without merit.

### 2. Tabatchnick Personally was Intended to be the Borrower and Payee of the Check

Emmer relies on his own testimony and that of Tabatchnick in arguing that the evidence was undisputed that Emmer intended the check to be drawn to Tabatchnick personally, not to JNT, and that, consequently, plaintiff has no right to reclaim the $100,000 check for the benefit of the estate. However, in addition to these statements from unquestionably interested parties, there was evidence from which the jury could have reasonably determined that JNT was the intended payee. For example, Tabatchnick testified several times at trial that the purpose of the loan was to save JNT. Tabatchnick also stated in his deposition that the money was to be used only for JNT. In addition, Tabatchnick testified that he never examined the check and

5. *See* note 3, *supra*.

therefore never discovered that it was payable to the order of JNT. Considering the importance of the check to the survival of JNT, the amount of money involved, and the fact that Tabatchnick personally picked up the check from Andresen & Company and carried it with him for several days, the jury might well have doubted Tabatchnick's credibility and discounted his testimony accordingly. That JNT, not Tabatchnick, was in fact named as payee on the check is also probative of Emmer's intention. Plaintiff's Exhibit 23, a letter dated February 11, 1972 prepared for Emmer by Douglas Fischer of Andresen & Company, confirming Fischer's authority to make payable $100,000 to JNT, not to Tabatchnick, is further evidence that JNT was the intended payee. Emmer argued that Andresen & Company acted contrary to his instructions in making the check payable to JNT. However, Fischer was a disinterested third party who prepared the letter contemporaneously with the request for and preparation of the check. The jury may well have inferred that Fischer had no reason to do anything but follow Emmer's order and that he did precisely that. In short, there was probative evidence from which the jury could fairly conclude that JNT was the intended payee of the check.

### 3. Plaintiff Proved No "Reliance" Sufficient for Recovery

Emmer appears to contend that the Court mistakenly considered reliance to be a basis for liability on the issue of preference and that no evidence was presented upon which the jury could conclude that there had been any such reliance. The simple answer to this argument is that the Court is in agreement with Emmer that reliance is not an issue relevant to liability for a preference. Emmer is incorrect in stating that the Court instructed the jury on reliance. Emmer apparently refers to the Court's reference in marshalling the evidence to plaintiff's contention that Tabatchnick used the check as the property of JNT by showing it to at least one trader and that, by patting his wallet pocket, Tabatchnick indicated to people at the National Association of Securities Dealers ("NASD") that JNT had additional capital available. These references were made in the portion of the charge which dealt with the question of whether the check was intended for JNT or for Tabatchnick personally. The Court believes that it is evident when the charge is read in context that this discussion related to the issue of whether the check was the property of JNT, and not to any question of reliance. Accordingly, it is immaterial whether or not plaintiff established that there was reliance on the check.

### 4. Emmer's Lack of Knowledge of the Insolvency of JNT

Emmer submits that the evidence was explicit and unequivocal that Emmer had no knowledge or reasonable cause to believe that JNT was insolvent at the time the check was "transferred" to Emmer. He relies on Tabatchnick's testimony that he did not tell Emmer that JNT was in bad financial condition, but only explained to him that the firm had a technical short-term problem with the NASD. Emmer further points to both his own and Tabatchnick's testimony that at the time in question they believed that the company was solvent.

Assuming *arguendo* that the jury credited Emmer's assertion that he had no actual knowledge regarding JNT's insolvency, it could still have found that there was reasonable cause to believe that JNT was insolvent.

The law will:

preclude a creditor from deliberately closing his eyes so as to remain in ignorance of the debtor's condition; "where circumstances are such as would incite a man of ordinary prudence to make inquiry, the creditor is chargeable with notice of all facts which a reasonable diligent inquiry would have disclosed" and "an inquiry of the debtor alone is generally insufficient."

*In re Hygrade Envelope Corp.,* 366 F.2d 584, 586–87 (2d Cir. 1966), *quoting* 3 *Collier on Bankruptcy* ¶ 60.53, at 1063–65 (14th ed. 1964).

There was evidence from which the jury could have found that Emmer was on notice of facts which would have disclosed JNT's insolvency. For example, Tabatchnick testified that he told Emmer that he needed the loan and that if he did not get it he would be out of business. The jury also could have found that a person of ordinary prudence would have inquired further into the nature of the problem when Tabatchnick told Emmer that the purpose of the loan was to cure a technical problem with the NASD. Indeed, in response to an inquiry from the Court, Emmer himself testified that "I did not, *stupidly,* ask him what he meant" by a technical problem. On this record, the jury was within its province in concluding that a reasonable person in Emmer's position would have known of JNT's insolvency.

### 5. Emmer's Defense of Misrepresentation was Established

This assertion can be disposed of rapidly. Assuming *arguendo* that such a defense could theoretically exist with regard to the check transaction, it must nevertheless be rejected here because it was never asserted by Emmer in his pleadings, nor was notice given, by the proof or otherwise, to plaintiff, the Court or the jury that Emmer intended to litigate such a defense at trial. This resulted not only in failure to present this question to the jury, although it was one that required the jury's consideration, but, more fundamentally, in severe prejudice to the Trustee, since not knowing of the defense, he could not address himself to it at trial. Thus, any purported defense was waived.

### 6. The Verdict of the Jury Does Not Require a Money Judgment

■ Emmer alleges that the jury's finding that the $100,000 check was a preference does not require a money judgment, but at most entitles the Trustee to the return of "an inchoate right of action on whatever underlying obligation remained on the check itself." This position is without merit. Section 60b of the Act provides that if the elements of a preference are proved and the preferred creditor had reasonable cause to believe the bankrupt was insolvent, the trustee may recover the property, or, if it has been converted, its value. "Within the meaning of § 60b, property has been 'converted' only when it has been 'so dealt with that in the event of a final adverse judgment the preferee cannot return the identical property in substantially as good condition as when the bankrupt had it.'" 3 *Collier on Bankruptcy* ¶ 60.59[1] (14th ed. 1977) ("*Collier*"), *quoting Perkins v. Remillard,* 84 F.Supp. 224, 227 (D.Mass. 1949). In the instant case, it is obvious that the property cannot be returned in substantially as good condition as when JNT had it. Thus, assuming plaintiff proved all the other elements of a preference under § 60, he would be entitled to recover the value of the transferred property.

### 7. The Check Never Became the "Property" of JNT

Emmer next contends that he did not receive a preference because the check never became the "property" of JNT. In this regard, he reiterates his argument that Tabatchnick, not JNT, was the intended payee of the check. As discussed in part I(B)(2), *supra,* there was sufficient evidence for the jury to decide to the contrary. Emmer next argues that the Court itself concluded that the check was Tabatchnick's in its summary judgment opinion. This allegation is clearly without any merit. The language in the Court's opinion to which Emmer refers was merely the Court's recitation of Emmer's version of the facts. In the very next paragraph of its opinion, the Court summarized the undisputed evidence. That summary did not include the facts to which Emmer refers.

Emmer lastly argues that JNT never received property because a check is merely a promise to pay which does not itself vest in the payee any title or interest to the funds in question. This contention is more troublesome and raises the issue which has led the Court to conclude that judgment notwithstanding the verdict must be granted.

Emmer's statement of the legal effect of a check is technically correct under the law of commercial paper. *See* Uniform Commercial Code ("U.C.C.") § 3–409. On the other hand, the term "property" has been given an extremely broad interpretation under the Bankruptcy Act, encompassing "anything of value which has debt-paying or debt-securing power." 3 *Collier* ¶ 60.07[2], *quoting Tatum v. Acadian Production Corp.*, 35 F.Supp. 40 (E.D.La.1940); *see Carson, Pirie, Scott & Co. v. Chicago Title & Trust Co.*, 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171 (1901). Based upon the latter definition, the Court was previously of the view that the check was property, as it appeared that without ever obtaining formal title or interest, JNT could have used the check to pay or secure very substantial debts. Having once accepted the premise that JNT received property, it seemed to follow that the check transaction could constitute a preference, albeit a most unusual one.

■ However, even if the unnegotiated check technically falls within the definition of "property," the Court has now concluded that a further, insurmountable, obstacle to plaintiff's preference claim remains when one considers whether JNT owed Emmer any "antecedent debt" by virtue of its possession of the check. As Emmer has asserted, a check itself does not vest in the payee any title to or interest in the funds in question. *See* U.C.C. § 3–409. It is merely an order to a bank to pay the amount specified and a conditional promise by the drawer to pay such amount if the bank refuses to do so. *See id.* §§ 3–104; 3–413. Since JNT did not cash or negotiate the check before Tabatchnick voided it, and since no funds were ever transferred from Emmer's account at Andresen & Company, no debt ever arose, as all Emmer had given JNT at the time the unnegotiated check was voided was a promise or offer to provide $100,000 to JNT if the latter wanted to accept it. Emmer at all times retained title to the funds and had the power to prevent JNT from obtaining title by simply stopping payment on the check. Therefore, the Court believes that, as a matter of law, the voiding and return of the check to Emmer was not a preference because there was no transfer of property of the debtor "for or on account of an antecedent debt" within the meaning of § 60.[6]

Plaintiff has previously argued in the motions for summary judgment that the fact that the check was never cashed or negotiated did not preclude a finding of a preference. Plaintiff maintained that the purpose of the check was to delay the NASD action threatened against JNT due to an alleged violation of the former's net capital requirements. Although the check was never cashed, it was plaintiff's position that the check served its intended purpose in that by telling the NASD it had the check and showing it to its representatives, JNT succeeded in staving off the NASD on a short-term basis.

Even if possession of the check benefited JNT by postponing its inevitable demise, the Court believes that any such benefit is irrelevant to the issue at hand. Plaintiff does not contend that JNT owed Emmer a debt in the amount of the benefit it received from the several days' use of the piece of paper on which the check was written, nor does he allege that Emmer received a preferential payment in that amount, which amount should be returned to the estate. What plaintiff seeks to recover is the $100,000 value which would have been included in JNT's estate, had it cashed or negotiated the check prior to bankruptcy. As the Court has indicated, however, it believes, as a matter of law, that plaintiff fails to state a claim for a

---

6. *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir. 1974) is of some relevance to the issue at hand. There the Court held that a "transfer" under § 60 occurs not upon the sending of a check by the drawer or the receipt of the check by the payee, but only upon payment of the check by the drawee. *Id.* at 1293. *See also In re Lyon*, 121 F. 723, 726 (2d Cir. 1903); 3 *Collier* ¶ 60.14. Following the reasoning of *Fitzpatrick*, JNT could not have made a preferential transfer to Emmer of the check because it had not yet been transferred anything by Emmer.

preference in this amount because there was no antecedent debt. Therefore, while the Court has found all the other arguments raised by Emmer insufficient under the applicable standards to warrant either judgment notwithstanding the verdict or a new trial,[7] it has concluded that judgment notwithstanding the verdict must be entered in favor of both Emmer and Tabatchnick on the preference claim.

## II. Tabatchnick's Motion to Correct the Judgment

Since the Court has already determined that judgment notwithstanding the verdict should be entered for Tabatchnick with regard to the preference claim, it might appear that consideration of Tabatchnick's motion to correct the judgment on that claim would be extraneous. However, Tabatchnick's arguments warrant discussion, as they have led the Court to conclude that, even if the check transaction were a preference, Tabatchnick would not be liable therefor, and, furthermore, that like reasoning precludes holding Tabatchnick liable for the value of the Commonwealth Silver warrants on the basis of § 67d.

Tabatchnick claims that judgment for $100,000 was erroneously entered against him on the issue of the preference due either to mistake or the misconduct of plaintiff. He bases this contention on the fact that the complaint named only Emmer as a defendant on the claim of preference, that only Emmer's liability for the preference was tried, and on the argument that he could not, as a matter of law, be liable for the preference.

Despite the fact that Tabatchnick was acting *pro se*, plaintiff responds that Tabatchnick's liability for the preference was tried with the implied consent of the parties, and that pursuant to Rule 15(b), Fed.R.Civ.P., the complaint was implicitly amended to name Tabatchnick as a defendant to the preference claim. Because the Court agrees with Tabatchnick that, as a matter of law, he was not a proper defendant on the preference claim, it need not consider whether the complaint could be or was in fact so amended.

Section 60b of the Bankruptcy Act specifically states from whom a preference may be recovered. It provides in relevant part:

7. In a "Supplemental Memorandum Re Post-Trial Motions," Emmer argues that he is entitled to a new trial on the additional grounds that certain evidence prejudiced him and prevented him from receiving a fair trial. Not having raised these arguments when the evidence was introduced at trial, Emmer waived any objections based thereon. In any event, the Court does not find these additional arguments persuasive. Emmer contends that he was prejudiced because plaintiff introduced evidence on subjects regarding which plaintiff had refused to give responses during discovery, having claimed at that time that they were irrelevant. Emmer also asserts that he may have been somehow prejudiced by the admission into evidence of portions of a deposition which he believes may have come from a sealed transcript in another proceeding. Both of these conclusory allegations must be rejected because Emmer has presented nothing to substantiate or explain them.

Emmer's assertion that a severance should have been ordered because he was allegedly prejudiced as a result of the introduction of certain evidence solely against Tabatchnick is also unconvincing. Putting aside for the moment the fact that Emmer never moved for a severance, the Court does not agree that he was unfairly prejudiced. In each instance that evidence was admitted as to Tabatchnick only, the jury was given careful limiting instructions. Furthermore, the only evidence of substance offered against Tabatchnick alone consisted of portions of Tabatchnick's deposition. The Court instructed the jury that, except when they were told otherwise, they were to consider the deposition against Tabatchnick only, because plaintiff, of his own accord, agreed to such a limitation on the deposition's use. The Court notes, however, that it would appear that because Emmer was afforded notice and an opportunity to cross-examine Tabatchnick, the latter's deposition testimony would have been admissible against Emmer as well as against Tabatchnick. *See* Rule 32(a)(2), Fed.R.Civ.P. ("The deposition of a party . . . may be used by an adverse party *for any purpose*."); *cf.* 3A J. Weinstein, H. Korn, A. Miller, *New York Civil Practice* ¶ 3117.04 (1977) (interpreting parallel provision of New York Civil Practice Law & Rules—"If defendant B is given notice of the examination before trial of his coparty (A) then the plaintiff should be allowed to use the deposition 'for any purpose' . . , i. e., against B." *Id.* ¶ 3117.04 at 31–340).

Where the preference is voidable, the trustee may recover the property, or if it has been converted, its value, *from any person who has received or converted such property* . . ..

(emphasis added). The Trustee offered no proof and made no argument that after JNT transferred the check, Tabatchnick received or converted it. He suggests rather that the value of the allegedly preferentially transferred property may be recovered from Tabatchnick based on his collusion with Emmer. However, this Circuit has held that collusion with the recipient of a preference does not render a third-party non-recipient liable for the return of the property or its value. In *Duell v. Brewer*, 92 F.2d 59 (2d Cir. 1937), the Court held that the directors of a corporation which received a voidable preference were not themselves liable for the preference even though they were active in procuring the transfers and had full knowledge of the bankrupt's insolvency.

> [I]f taking a preference were a tort, they would be liable, just as the directors of a company are liable for any other torts which they procure it to commit. But preference is the creature of statute,

whether under the Bankruptcy Act or the New York Stock Corporation Law; and the only resulting liabilities are those which the statutes declare. Section 60b of the Bankruptcy Act enacts that the trustee may recover from the "person receiving it or to be benefited thereby . . . the property or its value." This is inconsistent with the notion that one person who is the active means in procuring another to obtain a preference is liable in damages.

92 F.2d at 60.[8] *See also Smyth v. Kaufman*, 114 F.2d 40, 43 (2d Cir. 1940). There thus exists an additional reason why judgment notwithstanding the verdict must be granted to Tabatchnick on the preference claim.[9]

While Tabatchnick's motion did not raise this issue, the Court, in researching the question of whether a non-recipient of the transferred assets could be sued for a preference, encountered the Ninth Circuit's opinion in *Elliott v. Glushon*, 390 F.2d 514 (9th Cir. 1967), holding not only that a nonrecipient of the bankrupt's property could not be sued for a preference under § 60, but also that such a person was not a proper defendant in an action to avoid a fraudulent transfer under § 67d.[10] The *El-*

---

**8.** The plaintiff in *Duell v. Brewer* based his preference claim on § 15 of the New York Stock Corporation Law, not on § 60 of the Bankruptcy Act. The Court specifically indicated, however, that the same result would obtain under § 60. 92 F.2d at 60.

**9.** The cases relied on by plaintiff are inapposite. One of the cited opinions, *New York Credit Men's Association v. Hasenberg*, 26 F.Supp. 877 (S.D.N.Y.1938), aff'd, 107 F.2d 1020 (2d Cir.), *cert. denied*, 309 U.S. 666, 60 S.Ct. 592, 84 L.Ed. 1013 (1939), involved a transfer by officers of the bankrupt corporation to a creditor of the corporation. The officers, as well as the creditor, were held liable for the preference. However, liability of the officers was premised not on § 60, but on § 15 of the New York Stock Corporation Law, which specifically provides for personal liability of directors and officers concerned in the making of a payment to a creditor with the intent of giving a preference when the corporation is insolvent. The federal Bankruptcy Act contains no comparable provision.

In the other case relied on by plaintiff, *Irving Trust Company v. Continental Bank & Trust Co.*, 13 F.Supp. 235, 237–38 (S.D.N.Y.1935),

Jack Minchenberg, the sole shareholder and controlling person of the bankrupt corporation, was held liable for a preferential transfer made by the bankrupt when it paid off a corporate note indorsed by the defendant. Insofar as Minchenberg's liability was premised on the federal Bankruptcy Act, this case is also distinguishable from the present one because it was decided under the predecessor to current § 60. The prior statute authorized recovery of the property or its value from the person "receiving [the preference] or *to be benefited thereby*." 44 Stat. 254 (emphasis added). Moreover, even if receipt of a benefit rendered a nontransferee liable for a preference under existing law, the present case would remain distinguishable because, in contrast to *Irving Trust*, where the preference extinguished Minchenberg's liability as indorser of the note, no evidence was presented at trial that Tabatchnick received any personal benefit from the alleged preference to Emmer.

**10.** The Court further held that the same reasoning applied with regard to fraudulent transfers under § 70e of the Bankruptcy Act, 11 U.S.C. § 110.

*liott* decision led the Court to reconsider the validity of its summary judgment opinion insofar as it granted judgment against Tabatchnick as well as Emmer under § 67d as a result of JNT's transfer of its warrants to Emmer without fair consideration.

Unlike § 60, § 67d is silent regarding from whom the Trustee may recover fraudulently transferred assets of the bankrupt.[11] Although the Court has not found any Second Circuit precedent on point, it finds the following reasoning of the Ninth Circuit persuasive:

> We must remember . . . that we are interpreting a statute designed to deal with bankruptcy matters in a somewhat circumscribed fashion, and not to preempt all state laws governing, for example, questions of fraud and deceit. The purpose of those sections of the Bankruptcy Act which are here relevant is clearly to preserve the assets of the bankrupt; they are not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets. The Act carefully speaks of conveyances of property as being "null and void," and authorizes suit by the trustee to "reclaim and recover such property or collect its value." The actions legislated against are not "prohibited"; those persons whose actions are rendered "null and void" are not made "liable"; and terms such as "damages" are not used. The legislative theory is cancellation, not the creation of liability for the consequences of a wrongful act. It is also significant that the term "fraudulent transfer" as used in the Act includes a great many transactions which do not constitute "actual" fraud; no intent to defraud need be found so long as the prescribed statutory criteria are met. Thus there is affirmative justification for rejecting a rule under which all persons having a hand in transactions later held void under the Act would be civilly liable. Limiting [those from whom recovery may be sought to parties who have actually received the transferred property] protects innocent persons from civil liability, while at the same time preserving the assets of the bankrupt's estate. The trustee may bring suit against those persons who received the transferred property. He may recover from them the value of that property if, for example, they have converted it so that recovery in specie is no longer possible. In the overwhelming number of instances, these rights will suffice to allow the trustee fully to protect the interests of creditors. And even if recovery against the recipients of the property is not possible because, for instance, of their own insolvency, state law may well—where actual fraud was engaged in—allow a damage action in the nature of deceit against any conspirators.

*Elliott v. Glushon, supra,* 390 F.2d at 516–17 (footnotes omitted).

This statutory interpretation does not jeopardize the recovery due the estate in the present case: The Trustee may recover the value of the property from the actual transferee, Emmer, who was held jointly and severally liable with Tabatchnick for the value of the warrants. Furthermore, the Ninth Circuit's prediction that state remedies supplementing the Bankruptcy Act would provide a basis for recovery against non-transferees in appropriate cases is also proved true in the present case. Tabatchnick remains liable for the value of the Commonwealth Silver warrants on the theory that his transfer of those warrants to Emmer without fair consideration to JNT constituted a breach of his duties to the corporation under B.C.L. § 720.

Therefore, the Court concludes that judgment notwithstanding the verdict must be entered in favor of Tabatchnick on the claim for a fraudulent transfer under § 67d as well as on the § 60 claim. Tabatchnick's motion, to the extent it seeks to correct the judgment as to the § 60 claim, is denied as moot.

Settle order on notice.

---

11. The statute merely provides that a transfer which is fraudulent under § 67d "shall be null and void as against the trustee . . . .." § 67d(6).