In re HUDSON VALLEY QUALITY MEATS, INC., Bankrupt.

Fred PLOTKIN, Trustee in Bankruptcy, Plaintiff,

v.

SUNFLOWER BEEF PACKERS, INC., Defendant.

Bankruptcy No. 79 BK 1878.

United States Bankruptcy Court, N.D. New York.

Dec. 9, 1982.

Edwards & Angell, New York City, for trustee; Thomas E. Pitts, Jr., Providence, R.I., of counsel.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for defendant; Daniel A. Zimmerman, New York City, of counsel.

## DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JEREMIAH E. BERK, Bankruptcy Judge.

### I. STATEMENT OF THE CASE

Plaintiff, trustee in bankruptcy of Hudson Valley Quality Meats, Inc. (hereinafter "Hudson Valley"), seeks to recover $175,000 as a voidable preference under § 60b of the Bankruptcy Act of 1898 (hereinafter

"Act"),[1] 11 U.S.C. § 96(b), from defendant, Sunflower Beef Packers, Inc. (hereinafter "Sunflower"). Sunflower moves herein for summary judgment on the ground that the transfer made to it by Hudson Valley was not, as a matter of law, a preference as defined by the Act.

Bankruptcy Act § 60a(1), 11 U.S.C. § 96(a)(1), defines a preference as:

> ... [1] a transfer, as defined in this Act, of any of the property of a debtor [2] to or for the benefit of a creditor [3] for or on account of an antecedent debt, [4] made or suffered by such debtor while insolvent [5] and within four months before the filing by or against him of the petition initiating a proceeding under this Act, [6] the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

Sunflower alleges that the transfer at issue (1) was not made to a "creditor," (2) nor was it for or on account of an antecedent debt, (3) nor did it deplete the bankrupt's estate such that creditors of the estate are unable to receive as great a percentage of their debt as they would otherwise. Sunflower contends that the transfer was part of a "money-management technique" employed by the two affiliated[2] corporations designed to enable Hudson Valley to elicit a short-term provisional credit from its depositary bank, Chemical Bank of New York (hereinafter "Chemical"), upon the deposit of checks drawn to Hudson Valley's order by Sunflower against insufficient funds on Sunflower's account at the York State Bank of Nebraska (hereinafter "York Bank").[3] In this instance, Sunflower drew a check in the amount of $175,000, allegedly against insufficient funds, on its account at York Bank to the order of Hudson Valley. The check was not earmarked for any particular creditor of Hudson Valley. Upon depositing the check with Chemical, Hudson Valley and Sunflower hopefully intended to take advantage of two factors: first, that Chemical would immediately grant Hudson Valley a provisional credit in full upon the deposit of the check and, second, that three to five business days would be required for the check to reach York Bank for payment since, at a minimum, it would travel from Chemical to the New York Clearing House to the Omaha, Nebraska Regional Clearing House and only then to York Bank.[4] Before Sunflower's check was presented for payment at York Bank by Chemical, Hudson Valley wire-transferred $175,000 derived from accounts receivable collections[5] to Sunflower's account at York Bank in order that the check would be honored upon presentment.

Sunflower contends that because it received the wire-transfer *before* its check had been presented for payment to York Bank, and thus before Hudson Valley had obtained actual possession of any money from Sunflower, a debtor-creditor relationship never arose. It thus maintains that the only true creditor in this transaction was

---

**1.** The Bankruptcy Act of 1898 was repealed effective October 1, 1979; however, it governs cases commenced prior to that date.

**2.** Rule of Bankruptcy Procedure 901(3)(C) provides:

(3) "Affiliate" of a bankrupt means ...
(C) a corporation 25 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by a person who directly or indirectly owns, controls, or holds with power to vote, 25 per cent or more of the outstanding voting securities of the bankrupt, ...

Stuart Kirshner and Alan Moore were, at the time of the transfer at issue, officers of both Hudson Valley and Sunflower and between them owned more than half of the voting stock of both corporations.

**3.** Affidavit of Kirshner and Affidavit of Moore.

**4.** Kirshner, in an affidavit with which Moore fully concurs, explains that "[a]s part of the money management technique utilized by deponent in the operations of both Sunflower and Hudson Valley, deponent continually tested the time lapse between deposit in New York and payment in Nebraska so as to obtain maximum utilization of available funds and to minimize interest expense to Chemical." Affidavit of Kirshner at 3–4; Affidavit of Moore at 1.

**5.** Tr. of Oral Arg. at 24; Brief for Sunflower at 3, 7.

Chemical which gave an "involuntary loan to Hudson Valley" in the form of a provisional credit.[6]

Sunflower concedes that it received a "transfer" "within four months of the date of bankruptcy" but denies the existence of the "creditor," "antecedent debt" and "greater percentage" elements, and argues further that the transfer did not deplete the bankrupt's estate. The insolvency of Hudson Valley, and Sunflower's reasonable cause to believe at the time of the transfer that Hudson Valley was insolvent, are issues of fact not presented on this motion for summary judgment.

For the reasons discussed below, Defendant Sunflower's motion for summary judgment is denied.

## II. STATEMENT OF AGREED FACTS

1. On May 25, 1979, Stuart Kirshner and Alan Moore were officers of both Hudson Valley and Sunflower and between them owned more than half of the voting stock of both corporations.[7]

2. On May 25, 1979, Sunflower drew a check for $175,000 against its account at York Bank payable to the order of Hudson Valley. The check was issued[8] to Hudson Valley and deposited in its account at Chemical on the same day.

3. On May 28, 1979, the next business day following the deposit, Chemical provisionally credited Hudson Valley's account in the amount of Sunflower's check.

4. On May 31, 1979, before the check had been presented to York Bank for payment, Hudson Valley wire-transferred $175,000 in cash from its account with Chemical to Sunflower's account at York Bank.

5. The wire-transfer was a "transfer" within the meaning of Bankruptcy Act § 1(30), 11 U.S.C. § 1(30).[9]

6. On June 1, 1979, York Bank, the drawee, paid upon presentment the check drawn by Sunflower and issued to Hudson Valley.

7. On August 27, 1979, Hudson Valley filed a voluntary petition under Chapter XI of the Bankruptcy Act of 1898 and was adjudicated a bankrupt on April 18, 1980.

8. The purpose of the delivery and subsequent deposit of Sunflower's check into Hudson Valley's account at Chemical was to enable Hudson Valley to obtain from Chemical an immediate extension of credit with which it could satisfy current cash flow needs.

---

6. Brief of Sunflower at 13. The agreed facts of this case raise the possible check-kiting nature of the transaction. *See* H. Bailey, *Brady on Bank Checks*, §§ 17.15–.17 (5th ed. 1979) on the subject of check-kiting. However, in view of the fact that the check was paid upon presentment, there is no reason to regard the transaction as a fraudulent kite. *See Williams v. United States,* 458 U.S. ——, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). In *Williams,* the Supreme Court held that a check is not a factual assertion of the amount of funds in the drawer's account which could be characterized as "true" or "false," and, since the face amount of a check is, in a literal sense, its value, even a check drawn against insufficient funds does not "overvalue" the amount of funds in the drawer's account. A check itself does not make any representation as to the state of the drawer's bank balance. The drawer does undertake though to pay the face amount of the check. U.C.C. § 3–413(2). The Court therefore held that the deposit of "bad checks" in federally insured banks is not proscribed by 18 U.S.C. § 1014.

7. *See* note 2 *supra.*

8. N.Y. Uniform Commercial Code § 3–102(1)(a) (McKinney 1964) defines "issue" as "the first delivery of an instrument to a holder or a remitter."

9. Bankruptcy Act § 1(30), 11 U.S.C. § 1(30), provides:

(30) "Transfer" shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor; . . .

## III. ISSUES

1. Was Sunflower a "creditor" of Hudson Valley at the time of the wire-transfer, such that the transfer was "to or for the benefit of a creditor"?

2. Was the wire-transfer from Hudson Valley to Sunflower "for or on account of an antecedent debt"?

3. Was the effect of the wire-transfer "to enable [Sunflower] to obtain a greater percentage of [its] debt than some other creditor of the same class"?

4. Did the wire-transfer deplete the bankrupt's estate?

## IV. DISCUSSION

1. *Was Sunflower a "creditor" of Hudson Valley at the time of the wire-transfer, such that the transfer was "to or for the benefit of a creditor"?*

Sunflower contends that it was not a "creditor" [10] at the time of the wire-transfer and therefore could not have received a preference from Hudson Valley. Sunflower reasons that since a check is not an assignment of funds (U.C.C. § 3–409 (McKinney 1964)) and since the provisional credit given by Chemical on Sunflower's check had neither "firmed up" nor become "available for withdrawal as of right," [11] Hudson Valley was not, at the time of the wire-transfer, in possession of Sunflower's funds and was consequently under no obligation to "repay" Sunflower. Additionally, since payment of its check might have been refused upon presentment, either because of a stop-payment order or for insufficient funds, Sunflower believes that this demonstrates that it was not a creditor of Hudson Valley at the time it received the wire-transfer.

■ The existence of a debtor-creditor relationship prior to the transfer from the bankrupt is critical to the existence of a preference. *Mandel v. Scanlon,* 426 F.Supp. 519, 522 (W.D.Pa.1977). Sunflower maintains that since a check is merely an order to the drawee to pay a stated amount upon demand, and, since a "transfer" is considered to occur only upon the payment of a check, it could not have been a "creditor" when it received $175,000 from Hudson Valley because such "transfer" had not yet been made. *See Fitzpatrick v. Philco Finance Corp.,* 491 F.2d 1288, 1293 (7th Cir. 1974); *Klein v. Tabatchnick,* 459 F.Supp. 707 (S.D.N.Y.1978), *rev'd on other grounds,* 610 F.2d 1043 (2d Cir.1979); *Olsen-Frankman Livestock v. Citizens National Bank,* 4 B.R. 809 (D.Minn.1980); *In re Duffy,* 3 B.R. 263, 265, 6 B.C.D. 88, 89 (Bkrtcy.S.D.N.Y. 1980). *See also* 3 *Collier on Bankruptcy* ¶ 60.14 at 822 (14th ed. 1977).

■ Sunflower's allegation that its check was drawn against insufficient funds is immaterial since the check was paid upon presentment. Sunflower did not therefore write a "bad check." For a check to be "bad" under *N.Y. Penal Law* § 190.05 (McKinney 1975), one who issues or passes it must intend or believe, at the time of issuance or passage, that the drawee will refuse payment upon presentment and in fact payment must be so refused. Sunflower issued and Hudson Valley passed a "good" check since the check was paid. There is no presumption in law that a check when issued has been drawn against sufficient funds. *See N.Y. Penal Law* § 190.10(1), (2). At best, there is a "common understanding" that checks are so drawn. However,

it would be equally plausible to suggest that many people understand a check to

---

**10.** Bankruptcy Act § 1(11), 11 U.S.C. § 1(11), defines the term "creditor" as including "anyone who owns a debt, demand, or claim provable in bankruptcy, ..."

**11.** Under U.C.C. § 4–213(3), a provisional credit "firms up" or becomes final when the collecting bank receives a final settlement on a check. The bank then becomes "accountable" to its customer for the amount of the check.

*See* U.C.C. § 4–213 Official Comment 9. The provisional credit becomes "available for withdrawal as of right" when the collecting bank (here, the depositary bank) "has had a reasonable time to learn that the settlement is final." U.C.C. § 4–213(4)(a). Neither event had yet occurred when Hudson Valley wired $175,000 to Sunflower.

represent that the drawer will have sufficient funds deposited in his account by the time the check clears, or that the drawer will make good the face value of the draft if it is dishonored by the bank. *Williams v. United States,* 458 U.S. ——, —— n. 7, 102 S.Ct. 3088, 3092 n. 7, 73 L.Ed.2d 767, 774 n. 7 (1982). U.C.C. § 3–413(2) provides simply that the drawer shall make good the payment of the face amount of the check if the drawee refuses payment and any necessary notice of dishonor is given. Sunflower's check was honored.

Sunflower has not contended that the delivery of its check was a gift to Hudson Valley or a payment on account of any obligation previously owing to Hudson Valley by Sunflower. On the contrary, it was agreed that Sunflower would transfer $175,000 to Hudson Valley and that Hudson Valley would transfer $175,000 to Sunflower. In the absence of circumstances indicating otherwise, it is inferred that a person who requests another to transfer property to him thereby bargains to pay therefor. *Restatement of Restitution* § 107(2) (1937); *see generally* 22 *N.Y.Jur.2d,* Contracts § 458 (1982). It is clear, upon examination of the record, that Hudson Valley "requested" Sunflower to transfer a check bearing its promise to pay and was accordingly under an obligation to repay. However, at the time of the wire-transfer, Hudson Valley's debt to Sunflower could not have been fixed or "absolutely owing" since it had not yet obtained possession of Sunflower's funds. *See* Act § 63a(1). A check is not an assignment of funds (U.C.C. § 3–409), nor does it convey to its holder a lien or property interest in the funds against which the check is drawn or by which it shall be paid.[12] The fixing of Hudson Valley's obligation to repay Sunflower would therefore have been contingent upon the payment by Sunflower of the face amount of its check, which did not occur until after Hudson Valley's wire-transfer.[13]

The primary criterion for establishing a "debt" under Act § 1(14) is the existence of a liability which is susceptible to proof and included within the catalogue of provable claims under § 63. Such claims may be fixed or contingent. A provable contingent debt or liability may as to its existence or amount depend upon some future event uncertain as to its occurrence altogether, or as to its time of occurrence. 3A *Collier on Bankruptcy* ¶ 63.30 at 1912–13 (14th ed. 1975). Upon the issuance of Sunflower's check to Hudson Valley, presentment and payment by Sunflower of the face amount of the check were future events uncertain as to their occurrence or the time of their occurrence. Thus, Sunflower's claim for repayment was contingent until such events occurred. Claims are contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future event was within the actual or presumed contemplation of the parties at the time the original relationship was created. *In re All Media Properties, Inc.,* 5 B.R. 126, 133, 6 B.C.D. 586, 587 (Bkrtcy.S.D.Tex.1980), *aff'd per curiam,* 646 F.2d 193 (5th Cir.1981). *See also In re Trimble Co.,* 339 F.2d 838, 844 (3rd Cir.1964); *In re Mullings Clothing Co.,* 238 F. 58, 67 (2d Cir.1916).

Arguably, upon the requested delivery of its check to Hudson Valley, Sunflower became a "creditor" with a provable claim founded upon a contingent contractual liability and was therefore in a position to receive a preferential transfer. *See* Act § 63a(8). Even before the check was cashed or negotiated by Hudson Valley, liabilities arose between the parties under contract and negotiable instruments law. Under contract law, Hudson Valley bargained to repay Sunflower when it requested the transfer. *Restatement of Restitution*

12. *See Garden Check Cashing Service, Inc. v. First National City Bank,* 25 A.D.2d 137, 141, 267 N.Y.S.2d 698, 702 (1966), *aff'd mem.,* 18 N.Y.2d 941, 223 N.E.2d 566, 277 N.Y.S.2d 141 (1966).

13. *See generally* D. Cowans, *Bankruptcy Law and Practice,* §§ 198–99 (2d ed. 1978).

§ 107(2) (1937); *see also City of Albany v. McNamara,* 117 N.Y. 168, 22 N.E. 931 (1889). The check itself was value and was issued only with the understanding that Hudson Valley would transfer $175,000 to the drawer. *See Newman v. Frost,* 52 N.Y. 422, 424 (1873); *Frazier v. Trow's Printing & Bookbinding Company,* 24 Hun 281 (App. Div.1881), *aff'd mem.,* 90 N.Y. 678 (1882); *Midtown Commercial Corp. v. Kelner,* 29 A.D.2d 349, 288 N.Y.S.2d 122 (1968). A negotiable instrument is value because it carries the possibility of negotiation to a holder in due course, after which the party who gives it cannot refuse to pay. U.C.C. § 3–303 Official Comment 6. Upon the issuance of the check, Hudson Valley owed Sunflower a "debt" the enforceability of which was contingent upon payment to Hudson Valley of its face amount. Although Sunflower's "transfer" to Hudson Valley was not effective until its check was paid, even upon the requested delivery of the check alone Sunflower owned a contingent claim for repayment such that it could preferentially receive a transfer of funds otherwise available to Hudson Valley's creditors at large. Had Hudson Valley made its transfer to Sunflower after issuance but prior to negotiating or "cashing" Sunflower's check, and, had the check subsequently been paid, such transfer by Hudson Valley should not logically escape avoidance as a preferential transfer.

It has been held, however, that the drawer of a check issued to a bankrupt did not receive a preference under Act § 60a when, prior to negotiating or "cashing" the check, the bankrupt destroyed it and returned the remains to the drawer. *Klein v. Tabatchnick,* 459 F.Supp. 707, 716 (S.D.N.Y.1978), *rev'd on other grounds,* 610 F.2d 1043, 1049 (2d Cir.1979). The bankrupt had requested a loan and received a check which he destroyed by tearing off the drawer's signature. The trustee in bankruptcy sought to recover the amount of the check on the ground that "voiding" the check created a voidable preference. The District Court found no preference and held that even if the check itself was "property of the estate," the drawer was not a "creditor" to whom an "antecedent debt" was owed. The Court reasoned that the bankrupt had not incurred a "debt" to the drawer because the check, not being an assignment of funds, did not vest in the bankrupt any title to or interest in the funds of the drawer, and further because the check had never been "negotiated or cashed." On appeal, the Circuit Court agreed that there was no preference since "[p]rior to the cashing of the check, there was simply no obligation owing to Emmer [the drawer] for which he could have had a recovery."[14] *Klein v. Tabatchnick,* 610 F.2d 1043, 1049. Under this reasoning, had the bankrupt transferred cash to the drawer prior to negotiating or cashing the check, such transfer would escape avoidance as a preference even if the check were subsequently negotiated or cashed. However rare such a situation may be, this conclusion seems unacceptable in view of the premise that, having requested a loan, the bankrupt promised to repay the lender and thereupon received the check.

Only in a footnote, however, did the District Court in *Klein* address the question whether the bankrupt actually executed a "transfer" when he returned the remains of a destroyed check. Following the reasoning of *Fitzpatrick v. Philco Finance Corp.,* 491 F.2d 1288, 1293 (7th Cir.1974), which held that a "transfer" under § 60 occurs upon the payment of a check and not upon its issuance, the Court in *Klein* stated that the bankrupt "could not have made a preferential transfer to Emmer of the check because it had not yet been transferred anything by Emmer." *Klein v. Tabatchnick,* 459 F.Supp. 707, 716 n. 6. The statement is ambiguous; it is not clear whether the Court is concluding that there was no "transfer" by the bankrupt or that Emmer was not owed a debt. However, in *Olsen-Frankman Livestock v. Citizens National Bank,* 4 B.R. 809, 813 (D.Minn.1980), the

---

**14.** For purposes of this analysis, Emmer is considered to be the drawer, although in *Klein* his position is not clearly defined as such. Emmer directed his agent, a stock brokerage firm in which he maintained an account, to furnish the check to the bankrupt.

Court read that footnote to say that "since the check was never paid, nothing was transferred to the bankrupt and therefore could not have been transferred out of the estate." The Court appears to be saying that the bankrupt in *Klein* never executed a "transfer." Since U.C.C. § 3–804 provides a method of recovery on instruments which are destroyed, the destruction of the instrument by the bankrupt in *Klein* did not in itself constitute a "transfer." The question reduces to whether the termination of the loan agreement was a "transfer" to the lender even though the check was never negotiated or cashed. It was not a "transfer" since the unilateral act of the bankrupt in destroying and returning the remains of the check in effect only meant that the bankrupt did not intend to repay the drawer and therefore that the drawer was advised not to honor its underlying obligation which continued to exist despite the check's destruction. Under the circumstances, it appears that by abandoning his desire to receive a loan, the bankrupt did not execute a "transfer" to a potential lender to or from whom no other outstanding obligation was owing. Had the bankrupt in *Klein* transferred cash to the drawer prior to the negotiation or cashing of the check, and had the check subsequently been negotiated or cashed, such cash-transfer would have been a preference even though at the time it was made the bankrupt was not in possession of the drawer's funds. The transfer would have been to a "creditor" with a contingent claim for repayment that arose, at the earliest, upon the requested delivery of the check.

At the latest, Sunflower held a provable contingent claim when Hudson Valley negotiated the check to its depositary bank. Even supposing that the delivery of a check was not sufficient to give rise to a contingent obligation to repay the drawer, it is clear from the facts herein that by the time of the wire-transfer, Hudson Valley owed a debt to Sunflower such that Sunflower held a provable claim.[15] In view of all the action taken upon the check, by virtue of U.C.C. Articles 3 and 4 Sunflower became exposed to liabilities to parties, in addition to Hudson Valley, which in principle could have sought payment from it as drawer.

The action taken upon the check and the consequent liabilities are as follows. When Hudson Valley deposited Sunflower's check, and thereupon committed it to the collection process, the depositary bank and all subsequent holders and indorsers of the check could have held Sunflower liable for its payment (U.C.C. § 3–413(2)). Upon dishonor, Chemical and every other intermediary bank in the chain of collection would have had the election either to charge back the provisional credit to Hudson Valley's account (U.C.C. § 4–212(1)) or to proceed directly against Sunflower as drawer (U.C.C. § 3–507(2)). Hudson Valley itself incurred liabilities as both an indorser (U.C.C. § 3–414) and as a customer making transfer warranties (U.C.C. § 4–207(2)).

Moreover, both Sunflower and Hudson Valley incurred significant liabilities upon the "withdrawal or application" of the provisional credit.[16] Examination of the record indicates that Hudson Valley took full ad-

---

**15.** *See* 1 *Collier on Bankruptcy* ¶ 1.14 at 87 (14th ed. 1974) for a discussion of "debt" under the Act. "Even before that time [1938], however, it was well established that obligations, founded upon contract, which, though not matured at the time of bankruptcy, were susceptible of liquidation or valuation had the status of provable claims and, accordingly, were debts within the meaning of what is now § 1(14)." *Id. See also Maynard v. Elliott,* 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028 (1931).

**16.** U.C.C. § 4–208(1) provides:

§ 4–208. Security Interest of Collecting Bank In Items, Accompanying Documents and Proceeds

(1) A bank has a security interest in an item and any accompanying document or the proceeds of either

(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;

(b) in case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of charge-back; or

(c) if it makes an advance on or against the item.

vantage of the provisional credit for use in its "regular operations." To the extent that the provisional credit was "withdrawn or applied," Hudson Valley, by virtue of the U.C.C., assigned to Chemical a security interest in the instrument. To that extent, Hudson Valley's right to the proceeds of the item was subject to Chemical's superior right to obtain reimbursement on account of its advance. U.C.C. § 4–201(1) and Official Comment 5. *See also* U.C.C. § 9–502(1). Chemical thus obtained a security interest to the extent that it gave *value* to Hudson Valley and apparently assumed the status of holder in due course to that extent. U.C.C. §§ 3–302, 3–303(a), 3–305, 4–209. As a holder, Chemical could have enforced payment against the drawer in its own name (U.C.C. § 3–301), though subject to the drawer's personal defenses (U.C.C. § 3–306). It is apparent, however, that Chemical was a holder in due course in light of Sunflower's admission that the intention was to obtain an "involuntary loan" from Chemical, and that Chemical "was perhaps an unwilling party or an unknowing party" not aware on a "conscious basis" of the insufficiency of funds against which the check was purportedly drawn.[17] Chemical would therefore have had the right to enforce payment from Sunflower without regard to any personal defense that Sunflower may have had against Hudson Valley, including want or failure of consideration. U.C.C. §§ 3–305, 3–408.

Sunflower had thus, to its detriment, suffered considerable financial exposure by May 31, 1979 when the wire-transfer was executed. Such exposure was not merely to third parties such as Chemical, but to Hudson Valley itself which had, as intended, used the provisional credit in its "regular operations" while relying on Sunflower's promise to pay (U.C.C. § 3–413(2)). Hudson Valley thus became indebted to Chemi-cal for $175,000 and obtained a right to enforce Sunflower's obligation to make good the promise to pay the face amount of the check.

██ Under New York law a legal detriment suffered by a promisee at the request of a promisor is sufficient consideration for the promise.[18] *Hamer v. Sidway,* 124 N.Y. 538, 545–46, 27 N.E. 256, 257 (1891); *Brown Bros. Electrical Contractors, Inc. v. Beam Construction Corp.,* 41 N.Y.2d 397, 401, 361 N.E.2d 999, 1002, 393 N.Y.S.2d 350, 353 (1977). Sunflower had not only incurred a liability to Hudson Valley upon the delivery of the check, but upon its deposit and the "withdrawal or application" of the provisional credit this liability was significantly increased as well as extended to third parties. This was a detriment to Sunflower which constituted consideration for Hudson Valley's contingent obligation to repay. Hudson Valley had itself suffered the detriment of having become indebted to Chemical when it used the provisional credit in its regular operations while relying on Sunflower's promise to pay. These detriments could not have been latent, unconsidered or merely fortuitous. The parties have shown that they clearly understood the operation and effect of a check drawn on a bank.

Although Hudson Valley was not in possession of Sunflower's funds at the time of the wire-transfer, Sunflower would have had a provable claim at such time under § 63a of the Act. The application of Act §§ 63a(4) and (8) is at issue. These clauses pertain to the provability of claims which arise from express and implied contracts and from contingent contractual liabilities. It is believed that clause (8) was not intended to create new *types* of provable claims, namely "contingent debts" and "contingent contractual liabilities," but, rather, was intended to eliminate any restriction of fixed

---

17. Affidavit of Kirshner at 3. Tr. of Oral Arg. at 31:

    JUDGE BERK: Was Chemical Bank a party to this transaction as a lender?
    MR. ZIMMERMAN [attorney for Sunflower]: Chemical Bank was perhaps an unwilling party or an unknowing party by the fact that it did give a provisional credit on these checks. Were they aware of it on a conscious basis; did Mr. Moore and Mr. Kirshner go to Chemical Bank and say we are going to do this; I think the answer to that is no, Your Honor.

18. *See* 4 *Collier on Bankruptcy* ¶ 67.33 at 503 (14th ed. 1975) on the subject of consideration.

liability that might have attached to the types of claims otherwise provable in bankruptcy. 3A *Collier on Bankruptcy* ¶ 63.30 at 1914 (14th ed. 1975). The addition of clause (8) to the Act by amendment in 1938 served to conform the statute with case law that had developed on the issue of the provability of contingent claims.[19] In this sense, clause (8) may be regarded. as modifying clause (4) among others. 3A *Collier on Bankruptcy* ¶ 63.23 at 1884 (14th ed. 1975). Thus modified or amplified, clause (4) would permit a creditor to prove a claim founded on a "contract express or implied" even though, in the language of clause (8), the contractual liabilities are contingent.[20] Under these provisions, therefore, at the time of the wire-transfer there was in essence a contract implied in fact to pay and to repay $175,000 for the purpose of satisfying in turn the outstanding obligations of Hudson Valley and Sunflower. At that time Sunflower had a provable claim founded upon a contingent contractual liability of Hudson Valley.

Only "[i]nsurmountable technical difficulties of liquidation alone will now take a contingent contractual claim out of the category of provable claims, or, more precisely, will with retroactive effect strip it of its natural status as a provable claim" under Act §§ 57d and 63d. 3A *Collier on Bankruptcy* ¶ 63.23 at 1884 (14th ed. 1975). "The limits of provability as to contingent contractual liabilities are now drawn exclusively from the angle of practical feasibility as it appears to the bankruptcy court." *Id.*

To the extent that § 57d even applies to the law of voidable preferences, it appears that at the time of the wire-transfer, Sunflower's claim would have been "capable of liquidation or of reasonable estimation" so as not to make it unprovable *ab initio*.[21] Thus, at the time of the wire-transfer, Sunflower was a "creditor" with a provable claim that was founded upon contingent contractual liabilities and "capable of liquidation or of reasonable estimation."

2. *Was the wire-transfer from Hudson Valley to Sunflower "for or on account of an antecedent debt"?*

The wire-transfer from Hudson Valley to Sunflower on May 31, 1979 was not part of a contemporaneous exchange because its effect was to extinguish an obligation owing to Sunflower that had arisen prior to such transfer and was consequently for an antecedent debt. Under Act § 1(14) a debt includes "any debt, demand or claim provable in bankruptcy." So defined, a debt within the scope of the Bankruptcy Act clearly denotes any liability which is susceptible to proof and included within the catalogue of provable claims in § 63.[22] It has been established that Sunflower was a creditor with a provable claim under § 63a(4) read in the light of § 63a(8). Therefore, it is also established that Hudson Valley owed Sunflower a debt at the time of and at the moment prior to the wire-transfer. This makes the wire-transfer *a fortiori* for an antecedent debt. In *National City Bank v.*

> [F]or all practical purposes [Act] § 63a(8), whether alone or in conjunction with [Act] § 63a(4), cannot but result in an amplification of the provability of contractual liabilities as provided by § 63a(4), rendering obsolete the precedents that formerly denied provability to a contractual claim on the sole ground that it was contingent.

**19.** *See Maynard v. Elliott,* 283 U.S. 273, 277, 51 S.Ct. 390, 392, 75 L.Ed. 1028, 1031 (1931) where the Court stated:

> Possible doubts as to the meaning of the section [Act § 63] should be resolved in the light of the purpose of the act "to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." [Quoting from *Williams v. United States Fidelity & Guar. Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713, 716 (1915).]

**20.** *See* 3A *Collier on Bankruptcy* ¶ 63.23 at 1884 (14th ed. 1975):

**21.** *See Schall v. Camors,* 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247 (1920) on the subject of liquidating contingent claims.

**22.** *See* 1 *Collier on Bankruptcy* ¶ 1.14 at 87 (14th ed. 1974).

*Hotchkiss,* 231 U.S. 50, 57–58, 34 S.Ct. 20, 21–22, 58 L.Ed. 115, 120 (1913), Mr. Justice Holmes stated:

> As all trace of the bank's money was lost when it entered the stream of the firm's general property, there can be no right of subrogation. Neither can a claim be upheld on the ground that there was no diminution of the bankrupt's assets, or that the transaction should be regarded as instantaneous and one. The consent to become a general creditor for an hour, that was imported, even if not intended to have that effect, by the liberty allowed to the firm, broke the continuity and established the loan as part of the assets. No doubt many general creditors have increased a bankrupt's estate by their advances, but they have lost the right to take them back.

■ *National City Bank v. Hotchkiss, supra,* and *Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917) established the general rule that if an exchange between the debtor and another party was intended to be contemporaneous and was in fact substantially contemporaneous, the bankrupt's transfer would not be considered preferential. In *Dean v. Davis, supra,* the Court deemed a transfer not preferential since both parties intended to make a secured loan. There, mortgage notes on the bankrupt's property were exchanged for a loan with which the bankrupt could satisfy an outstanding indebtedness to his bank. Although the mortgage on the bankrupt's real property securing the loan was not signed and recorded until one week after the loan was made, the transaction was found to be substantially contemporaneous. The Court stated that if anyone had received a preference it was the bank.

Sunflower likewise argues that Chemical alone received the preference because Chemical was the only creditor in the transaction and that payment of the check when presented by Hudson Valley's "collection agent" was really payment by Hudson Valley of its debt to Chemical since Hudson Valley's wire-transfer enabled Sunflower to pay the check. Sunflower thus alleges that the transaction between itself and Hudson Valley was intended to be and was a contemporaneous exchange. In fact, it was not.

First, Sunflower is incorrect in its contention that payment of its check to Hudson Valley was really payment by Hudson Valley of its debt to Chemical. Chemical did not become a party to the transaction between Sunflower and Hudson Valley when it provisionally credited Hudson Valley's account. Payment by Sunflower of the check was the fulfillment of its direct obligation on the check as drawer. In *Dean v. Davis, supra,* the bank was a true party to the transaction between itself and the bankrupt because it held notes of the bankrupt which it had discounted. The bankrupt paid this debt with a loan received from a third party contemporaneously in exchange for a mortgage covering practically all of its property. Here, Chemical was not a true party to the transaction and did not receive a preference.

Second, a contemporaneous exchange consists essentially in a present substitution of value and is conditioned on the virtually simultaneous performance of the parties. No extension of general unsecured credit is contemplated in such an exchange. Each transfer is made on account of the value presently received and not on account of a debt. *See e.g., Dean v. Davis, supra,* 292 U.S. at 443, 37 S.Ct. at 131.

■ Here, however, Hudson Valley's transfer was for a debt, as defined by Act § 1(14), incurred when Sunflower, at the request of Hudson Valley, knowingly exposed itself to liabilities incident to the negotiation of its check. Sunflower extended credit when it assumed the status of a contingent creditor upon the requested delivery of the check or, at the latest, upon its negotiation to Chemical.[23] The "debt" arose either upon the requested delivery of

---

23. *See In re Weis Securities, Inc.,* 542 F.2d 840 (2d Cir.1976); *In re Rustia,* 20 B.R. 131 (Bkrtcy. S.D.N.Y.1982).

the check or, at the latest, upon its deposit. These events antedated the wire-transfer. Therefore, the transfer was for an antecedent debt.

3. *Was the effect of the wire-transfer "to enable [Sunflower] to obtain a greater percentage of [its] debt than some other creditor of the same class"?*

▮ Sunflower belongs to the class of Hudson Valley's general unsecured creditors with regard to the transaction in question. It relied solely upon Hudson Valley's general credit for repayment. Sunflower would have had no right to the status of a secured or priority unsecured creditor under the Act. *See 3 Collier on Bankruptcy* ¶¶ 60.34–.35 (14th ed. 1977). Having received one-hundred per cent of its claim, Sunflower cannot deny that it obtained a greater percentage of its debt than that which members of the class of general unsecured creditors would receive after payment of valid secured and priority claims upon the distribution of the estate in bankruptcy. *See Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936). Therefore, Sunflower obtained a greater percentage of its debt than other creditors of the same class.

4. *Did the wire-transfer deplete the bankrupt's estate?*

The wire-transfer on May 31, 1979 was drawn from Hudson Valley's general assets otherwise available to its creditors and thus depleted the estate by $175,000.

▮ The concept of "depletion of the estate" while not strictly an element of a preferential transfer under § 60a of the Bankruptcy Act has nevertheless been engrafted thereon by the courts.[24] Without such a depletion the transfer would not enable a creditor to obtain a greater percentage of his debt than some other creditor of the same class. A depletion of the assets of the bankrupt is therefore an essential aspect of a voidable preference and flows from the Bankruptcy Act policy of equality of distribution among creditors.[25] The test to determine whether the estate has diminished by the transfer is typically stated in terms of the control over the transferred funds which the bankrupt was entitled to exert. As a result, if a creditor receives a transfer of property from the debtor which never became the debtor's property because it was "earmarked" for or designated to go to such creditor by a third party, no question of a preference arises. *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70, 72–73 (2d Cir.1938); *Miller v. Wells Fargo Bank Int'l. Corp.*, 406 F.Supp. 452, 463 n. 2 (S.D.N.Y.1975), *aff'd*, 540 F.2d 548 (2d Cir. 1976); *Hoffer v. Marine Midland Trust Co. of New York*, 294 F.Supp. 187, 189 (S.D.N.Y.1968).[26]

▮ The property transferred must be property of the debtor's estate. *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 184, 32 S.Ct. 633, 635, 56 L.Ed. 1042, 1046 (1912). If the property belongs to and is transferred by a debtor who may exert such control over it as to specify which creditor shall become the transferee, the estate has been diminished. *Smyth v. Kaufman*, 114 F.2d 40, 42–43 (2d Cir.1940); *see also Miller v. Wells Fargo Bank Int'l. Corp., supra; In re Moskowitz*, 13 B.R. 357, 359–60, 7 B.C.D. 1314, 1315 (Bkrtcy.S.D.N.Y.1981). Hudson Valley transferred money otherwise available to its general creditors and alone specified who should receive it. The provisional credit on Sunflower's check had already been used, as planned, to pay current expenses. The money so transferred had been credited to Hudson Valley's account as an advance by Chemical against newly-generated accounts receivable. Tr. of Oral Arg. at 24. The estate was thus depleted by the wire-transfer since such money was property of the estate otherwise available to Hudson Valley's creditors.

24. *See 3 Collier on Bankruptcy* ¶ 60.20 (14th ed. 1977).

25. *See 3 Collier on Bankruptcy* ¶¶ 60.19–.20 (14th ed. 1977).

26. *See Doggett v. Chelsea Trust Co.*, 73 F.2d 614 (1st Cir.1934); *In re Loring*, 30 F.Supp. 758 (D.Mass.1939); *Doughty v. Nassau Factors Corporation*, 56 F.2d 862 (E.D.N.Y.1932).

## V. CONCLUSIONS OF LAW

1. At the time of the wire-transfer, there was a contract implied in fact to pay and to repay $175,000 for the purpose of satisfying in turn the outstanding obligations of Hudson Valley and Sunflower, and at such time Sunflower was a "creditor" with a provable claim founded upon a contingent contractual liability of Hudson Valley.

2. The wire-transfer from Hudson Valley to Sunflower on May 31, 1979, was not part of a contemporaneous exchange because its effect was to extinguish an obligation owing to Sunflower that had arisen prior to such transfer and was consequently for an antecedent debt.

3. Sunflower obtained one-hundred per cent of its debt, which is a greater percentage than that which members of the class of general unsecured creditors, of which Sunflower was one, would obtain upon the distribution of Hudson Valley's estate in bankruptcy.

4. The wire-transfer on May 31, 1979 was drawn from Hudson Valley's general assets otherwise available to its creditors at large and thus depleted the estate by $175,-000.

Accordingly, defendant's motion for summary judgment is denied, and, since a search of the record reveals no question of material fact concerning the four issues herein addressed, interlocutory summary adjudication as to such issues is hereby directed pursuant to Fed.Rule Civ.Proc. 56(d). *See* 6 *Moore's Federal Practice* ¶ 56.20 (2nd ed. 1982). Settle an appropriate order.