**In re Dennis L. KLECKNER, Debtor.**

**Joseph D. OLSEN, Trustee, Plaintiff,**

**v.**

**Roger T. RUSSELL, Defendant.**

**No. 88 C 20042.**

United States District Court,
N.D. Illinois, W.D.

Oct. 7, 1988.

144

Joseph D. Olsen, Rockford, Ill., for plaintiff.

Roger T. Russell, Belvidere, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court as an appeal by appellant, Attorney Roger T. Russell (hereinafter "Attorney"), from a decision of the United States Bankruptcy Court, Northern District of Illinois, Western Division, denying summary judgment to Attorney Russell, and granting summary judgment to the bankruptcy trustee on his claim that a transfer of $12,627.20 to Attorney Russell pursuant to a contingent fee agreement between the debtor and Attorney Russell was avoidable. While the bankruptcy trustee had briefed and argued that the payment constituted an avoidable preferential transfer under 11 U.S.C. § 547(b) (1982), the Bankruptcy Court granted the bankruptcy trustee's motion for summary judgment under 11 U.S.C. § 544(a) (1982), treating the bankruptcy trustee as a hypothetical lien creditor. The Bankruptcy Court further ruled that Attorney Russell had not perfected a statutory lien pursuant to the Illinois Attorney's Lien Act, *Ill.Rev.Stat.* ch. 13, para. 14 (1979), and did not have a charging, retaining or possessory lien.

## I. FACTS

On September 20, 1983, the debtor, Dennis L. Kleckner, executed an agreement to retain Attorney Roger T. Russell to represent him in a state court action to recover damages for personal injuries suffered by debtor in a motorcycle accident which occurred on July 8, 1983. The terms of the contingent fee agreement provided that the debtor

"agree[d] to pay ... attorneys' fees as follows: 50% of whatever may be recovered from said claim whether by suit, settlement, or in any other manner;

... I further agree that in addition to the above attorneys' fees, all court costs, subpoena costs, photos, depositions, court reporter costs, reports, witness statements, and all other out-of-pocket expenses directly incurred in investigating or litigating this claim shall be paid by the undersigned, *and that said expenses and attorneys' fees may be deducted from the proceeds of any recovery.*" (emphasis added).

On June 12, 1984, the insurance company of Alfred F. Dyson, the defendant in the state court proceeding, sent a settlement check in the amount of $25,000.00 and a release form to Attorney Russell. On June 16, 1984, the debtor signed the release form. On June 29, 1984, after having the settlement check signed by the Illinois Department of Public Aid, Attorney Russell deposited the $25,000.00 settlement check in his trust account, paid $2,039.17 to the Illinois Department of Public Aid, and paid $12,627.20 to himself for attorney's fees and costs pursuant to the September 20, 1983 contingency fee contract. On August

16, 1984, the debtor filed for relief under Chapter 7 of the Bankruptcy Code. The Bankruptcy Trustee brought an Adversary Proceeding pursuant to Section 547(b) of the Bankruptcy Code to recover the $12,-627.20 payment from Attorney Russell as an avoidable preference. Defendant, Russell, then filed a motion for summary judgment on the issue of whether he had (1) a perfected attorney's lien, (2) an equitable lien, or (3) a charging, retaining or possessory lien against the proceeds of the settlement check. Prior to certifying this interlocutory appeal, Bankruptcy Judge Richard N. DeGunther[1] twice denied defendant's motion for summary judgment, resting his decisions on § 544(a) of the Bankruptcy Code. *In re Kleckner,* 65 B.R. 433 (Bankr. N.D.Ill.1986); *Order,* Adversary No. 84 A 2132, (Bankr.N.D.Ill. May 29, 1987). The defendant's motion for reconsideration was also denied by the Bankruptcy Court. *In re Klecker,* 81 B.R. 464 (Bankr.N.D.Ill.1988).

## II. *DISCUSSION*

There appear to be three issues presented for review before this court: first, whether a statutory attorney's lien is created pursuant to the Illinois Attorney's Lien Act; second, whether an equitable lien has come into existence and if so, whether the lien is sufficient to defeat the classification of this transaction as an avoidable preferential transfer; and third, whether a charging, retaining or possessory lien has come into existence.

### A. Statutory Lien

■ A statutory attorney's lien comes into existence and can be enforced pursuant to the Illinois Attorney's Lien Act, *Illinois Rev.Stat.* ch. 13, para. 14 (1987), which states, in pertinent part:

Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection ... for the amount of any fee which may have been agreed upon by and between

such attorneys and clients.... To enforce such lien, *such attorneys shall serve notice in writing, which service may be made by registered or certified mail,* upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action, and such lien shall attach to any money or property which may be recovered, on account of such suits, claims or causes of action, *from and after the time of service of the notice.*

*Ill.Rev.Stat.* ch. 13, para. 14 (1987, amended by P.A. 79–1365. eff. Oct. 1, 1976) (emphasis added).

Because the Attorney's Lien Act was unknown to the common law, in order to establish a valid attorney's lien, an attorney is required to strictly comply with all the provisions of the Act. *Crabb v. Robert R. Anderson Co.,* 117 Ill.App.2d 271, 275–76, 254 N.E.2d 551 (1st Dist.1969); *Unger v. Checker Taxi Co.,* 30 Ill.App.2d 238, 241, 174 N.E.2d 219 (1st Dist.1961).

While defendants admit that they did not serve notice on plaintiffs by registered or certified mail as required by the Act, defendants assert that because actual notice was received by plaintiffs as evidenced by their responsive return letter, the intent of the statute has been satisfied and a valid attorney's lien created. This Court disagrees. While the intent of the statute may have been to allow a valid attorney's lien in just this type of situation, the Illinois Supreme Court has clearly stated, albeit under different factual circumstances, that the statute must be complied with strictly. This has not been done in the instant case. Therefore, it is the judgment of this Court that no valid attorney's lien has been created pursuant to the Illinois Attorney's Lien Act.

### B. Equitable Lien

1. 11 U.S.C. § 544(a)—Hypothetical Lien Creditor

■ Section 544(a) of the Bankruptcy Code has been referred to as the "strong

---

1. Bankruptcy Judge, United States Bankruptcy Court, Northern District of Illinois, Western Di- vision.

arm clause" of the Code.[2] This section of the Bankruptcy Code provides that:

(a) [t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists....

11 U.S.C. § 544(a)(1)—§ 544(a)(2).

Section 544(a) gives the trustee the power to set aside or avoid transfers of or encumbrances on the debtor's property as of the date of commencement of the bankruptcy action.

In the ruling below, Judge DeGunther held that there was "a valid assignment of an interest in the settlement fund," but that Attorney Russell's interest was avoidable by the bankruptcy trustee under Section 544(a) of the Code. *In Re Kleckner*, 65 B.R. 433, 435 (Bankr.N.D.Ill.1986). Judge DeGunther reasoned that because

the trustee, in the position of a hypothetical lien creditor, can defeat a claim which is unperfected on the date of the commencement of the bankruptcy action, Attorney Russell's unperfected claim was avoidable by the trustee. *Id.* at 435–36. This court disagrees with that conclusion for a number of reasons.

On August 16, 1984, the date of the commencement of the bankruptcy proceedings and the critical date for purposes of analysis under Section 544(a) of the Code, Attorney Russell had an attorney-client contingent fee agreement which was fully executed and fully satisfied.[3] By June 29, 1984, Attorney Russell was in receipt of the entire amount covered by the contingent fee agreement; no monies were due and owing from the client to the attorney following that date. In fact, after June 29, 1984, there was nothing to perfect because the contract had been fully performed. Therefore, Section 544(a) could not be used to defeat the interest of Attorney Russell in his contingent fee portion of the settlement fund because a hypothetical lien creditor could not defeat Attorney Russell's interest on the date of filing the bankruptcy petition.

Judge DeGunther then reasoned that because 544(a) had rendered the equitable lien avoidable, it was merely an unsecured claim. Judge DeGunther then appears to apply the elements of Section 547(b), including the 90-day prepetition period, to hold Attorney Russell's interest an unperfected equitable lien on which there was a transfer of property of the debtor for the benefit of a creditor within 90 days of the

---

**2.** *See* 4 Collier on Bankruptcy, ¶ 544.01, 544–2 to 544–4 (L. King 15th ed. 1988). The Senate Report specifically recognized this as the strong arm clause when it stated:

[s]ubsection (a) is the "strong arm clause" of current law, now found in Bankruptcy Act § 70c. It gives the trustee the rights of a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition; [and] of a creditor with a writ of execution against the property of the debtor unsatisfied as of the date of the petition....

S.Rep. No. 95–989, 95th Cong., 2nd Sess. 85 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st

Sess. 370 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5871, 6326.

**3.** For § 544(a) purposes, it doesn't make sense to categorize the nature of Attorney Russell's position as an equitable lien or an equitable assignment. In fact, on the date of the filing, Attorney Russell's possessory interest in his portion of the settlement fund (i.e. his possession of the cash) could not be classified as anything but a fully executed contractual arrangement. Therefore, on that date, there was no "debt" and there was no "lien."

filing of the bankruptcy petition. *Id.* at 436.

Even if 544(a) did render the equitable lien unperfected and unsecured, which it does not, this Court fails to find any applicable 90–day prepetition period in Section 544(a), and no cross-references to Section 547(b) which would make those elements applicable to a Section 544(a) analysis. Therefore, this case is reversed as to the applicability of Section 544(a) to the instant fact pattern.

While the Bankruptcy Court based its holding on Section 544(a), Judge DeGunther stated in a footnote that "the Court is also of the opinion that the assignment is an avoidable preference under Section 547(b) of the Code." 65 B.R. 433, 435–36 n. 3 (Bankr.N.D.Ill.1986). While this quote is only *dictum*, the issue of the applicability of Section 547(b) to this case was raised and briefed by both parties and merits the Court's attention. It now remains to be determined what applicability, if any, § 547(b) has to this action.

2. Section 547(b)—Preferential Transfers

In order for the bankruptcy trustee to successfully classify the contingency fee of Attorney Russell as a prepetition preferential transfer, the trustee has the burden of showing the presence of all five elements set out in Section 547(b) of the Code. Section 547(b) of the Bankruptcy Code provides as follows:

(b) . . . the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; . . .; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1982).

Assuming, *arguendo*, that the transfer, if any, was made (1) to or for the benefit of a creditor; (2) while the debtor was insolvent;[4] (3) on or within 90 days before the date of filing of the petition; and that (4) the creditor received more than he would have received under Chapter 7, (*see* 11 U.S. C. § 547(b)(1), (3), (4) and (5)), the two issues remaining concern whether this fact situation involved any "transfer of property of the debtor" and whether the transfer was "for or on account of antecedent debt." 11 U.S.C. § 547(b) and § 547(b)(2). Both of these factors must be present in order to allow the bankruptcy trustee to avoid the prepetition transfer as preferential, and both of these questions will ultimately rest on whether the entire settlement check was, in fact, the "property of the debtor" on either the June 12, 1984 or the June 29, 1984 date.

a. *"Transfer of Property of the Debtor"*

■ In order for there to be a "transfer of property of the debtor", a threshold inquiry would necessitate a finding that the *res* in question is, in fact, property of the debtor.[5]

---

**4.** Section 547(b)(3) states that the transfer of an interest of the debtor in property must be "made while the debtor was insolvent." For purposes of § 547, a "debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). *See also* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 375 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 89

(1978), U.S.Code Cong. & Admin.News 1978, pp. 5875, 6331.

**5.** If the Court found the *res* of the settlement check to be the "property of the debtor," the Court would have to further determine that there was a "transfer" of the debtor's property. A transfer of property is defined by the Bankruptcy Code as follows:

In *Lewis v. Braun, supra,* a case involving an attorney-client contingent fee agreement for the transfer of title to stock and the recovery of dividends thereon, the Illinois Supreme Court held that the attorney had obtained certain equitable rights under the contingent fee contract. The court stated that:

> [t]he matter of fees to be paid to complainant was not left to subsequent arrangement between the parties for reasonable compensation but was definitely fixed by written contract at certain percentages of the total sum collected. *This was sufficient to constitute an equitable assignment.* An equitable assignment is such an assignment as gives the assignee a title which, though not cognizable at law, equity will recognize and protect. *There must be an implied appropriation of the fund, or of some designated part, proportion or percentage of it, to act as an equitable assignment.*

*Lewis v. Braun,* 356 Ill. 467, 191 N.E. 56 (1934) (emphasis added and citations omitted).

*In re Rector,* 14 B.R. 1008 (E.D. Tenn.1981), involved fees due attorneys in a divorce action paid to them within 90 days of the filing of a bankruptcy petition. While this case did involve fees which had been ordered to be paid into the Circuit Court, the Bankruptcy Court reasoned that because the funds were "never subject to the debtor's control or disposition," the funds were never the property of the debt-

or and therefore could not have depleted the debtor's estate in contradiction to Section 547(b) of the Bankruptcy Code.

In a recent district court opinion, *Kallen v. Litas,* 47 B.R. 977 (N.D.Ill.1985), *rev'd sub nom., In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574 (7th Cir.1986), Judge Hart ruled there was no equitable assignment.[6] However, all the factors Judge Hart found *not* to be present in *Kallen v. Litas,* appear to be present in the instant case. In particular, the precise language in the respective contingent fee agreements are distinctive enough to provide the basis for a finding of an equitable assignment in this case.

In *Kallen v. Litas,* the contingent fee agreement merely provided that the debtor would pay 40% of any recovery and/or an hourly rate which was specified in the contract. Likewise, in *Department of Public Works v. Exchange National Bank,* 93 Ill.App.3d 390, 49 Ill.Dec. 218, 417 N.E.2d 1045 (2nd Dist.1981), relied on by Judge Hart, the court found no equitable assignment in a contract which would pay attorney "an amount equal to 28%" of a specified award. Both of these cases are inapposite. The contingent fee agreement in the present case provided for payment to the attorney of "50% of whatever may be recovered from said claim whether by suit, settlement, or in any other manner; ... and that said ... attorneys' fees *may be deducted from the proceeds of any recovery.*" (emphasis added).

---

'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property, including retention of title as a security interest.

11 U.S.C. § 101(40) (1976 Supp. II). In order to circumscribe the broad definition of "transfer," it would be necessary to find that the contingent fee agreement created an equitable assignment which impliedly appropriated some portion of the settlement fund to the attorney. *See Rector v. Huddleston,* 14 B.R. 1008 (Bankr.E.D.Tenn. 1981); *Lewis v. Braun,* 356 Ill. 467, 191 N.E. 56 (1934). If the attorney in the present case held an equitable ownership interest or an equitable assignment in the 50% fees plus costs, even the broad definition of transfer could not be met as the debtor would not be "disposing of or parting

with property." 11 U.S.C. § 101(48) (1985 Supp. III).

6. The Seventh Circuit Court of Appeals reversed Judge Hart's decision, but the reasoning behind the reversal is sketchy. The Seventh Circuit appears to base its opinion on the fact that there was no antecedent debt, although this is not clear. The court appears to recognize a contemporaneous exchange of promises (i.e. a debt) on the date of the contingent fee contract, however, the court suggests this did not constitute a preferential transfer, citing § 547(b). While this Court agrees with the holding of the Seventh Circuit, it bases its decision on the peculiar language of the contingent fee contract at issue. The Seventh Circuit's opinion in *In re Brass Kettle* simply does not provide enough reasoning to ascertain the breadth of the holding.

The language in the present case clearly does more than provide a personal promise by the debtor to pay Attorney Russell. Here, the language implies an appropriation of that portion of the fund equal to 50% of the settlement plus costs. *Lewis v. Braun,* 356 Ill. at 467, 191 N.E. at 56. This is because the attorneys' fees were directly imposed on the *res* of the settlement fund.

Therefore the court holds that the trustee cannot meet this requirement of Section 547(b), cannot avoid the $12,627.20 payment as a preferential prepetition transfer, and the order of the Bankruptcy Court is reversed.

### b. *Antecedent Debt*

Assuming, *arguendo,* that this court had found a transfer of the debtor's property to have had occurred, which it did not, the question would remain whether the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made...." 11 U.S.C. § 547(b)(2) (1982). This determination will rest on whether the debtor incurred the underlying debt on the date of the signing of the contingent fee agreement, on the date of the receipt of the settlement check, some other date, or not at all.

The Code does not define the term "antecedent debt." In addition, the Code fails to specify when a debt is incurred. *See In re Iowa Premium Service, Inc.,* 695 F.2d 1109 (8th Cir.1982). The Code does, however, define the term "debt" as "liability on a claim." 11 U.S.C. § 101(11) (1982). Further, a "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(4)(A) (1982) (emphasis added).

This court recognizes the legislative history of Section 101(4)(A) which evidences an intent to have the term "claim" interpreted broadly. *Ohio v. Kovacs,* 469 U.S.

274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985); *see* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6266; S.Rep. No. 95–989, 95th Cong., 2nd Sess. 21 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5807; *see also* 2 Collier on Bankruptcy ¶ 101–.04, p. 101–16.4 (15th ed. 1988).

It is clear that the property which is transferred by the debtor must be the property of the debtor's estate. *National Bank of Newport v. National Herkimer County Bank,* 225 U.S. 178, 184, 32 S.Ct. 633, 635, 56 L.Ed. 1042, 1046 (1912). Because the term "interest of the debtor in property" is nowhere defined in the Code, the court will look to state law to determine whether an asset is property of the debtor. *In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574, 575 (7th Cir.1986). However, the primary inquiry regards whether such transfer of property diminished or depleted the debtor's estate. 4 Collier on Bankruptcy ¶ 547.03, p. 547–22 (15th ed. 1988). For a transfer to diminish or deplete the debtor's estate, the property must "belong[ ] to and [be] transferred by a debtor who may exert such control over it as to specify which creditor shall become the transferee...." *In re Hudson Valley Quality Meats, Inc.,* 29 B.R. 67, 78 (Bankr. N.D.N.Y.1982).

However, this court also recognizes that a contingent claim arises out of the prior contractual relationship between the claimant and the debtor, *In re UNR Industries, Inc.,* 29 B.R. 741, 745 (N.D.Ill.1983), and that the existence or amount of the debt may depend on either the occurrence or timing of some future event. *In re Hudson Valley Quality Meats, Inc.,* 29 B.R. 67, 72 (Bankr.N.D.N.Y.1982).

How these principles will apply to the present case will depend, in large part, on the particular language in the instant contingent fee contract and the nature of the relationship between the parties to that contract.[7]

---

7. The appeal presently before this Court, and the cases cited above dealing with the same area of bankruptcy law, have been close questions

determined in large part by the particular words used in the respective contingent fee contracts. While this Court holds that the law as applied to

■ As noted previously, the contract in the present case provided that the 50% contingent fee plus costs "may be deducted from the proceeds of any recovery."

As stated above, this Court recognizes that an equitable assignment existed at the time of signing the contingent fee agreement on September 20, 1983.[8] While Illinois law holds that a settlement agreement does not give an attorney any rights in the *litigation, Anastos v. O'Brien,* 3 Ill.App.3d 1015, 279 N.E.2d 759, 763 (1st Dist.1972), there is no contention by the claimant that he has any rights or interest in the *litigation.* Rather, Attorney Russell claims on September 20, 1983, he owned an equitable interest in, and held a valid equitable assignment of, that part of any settlement agreement covered by the contract. This court agrees. All the language in the cases cited above link their holding that an avoidable preference exists to the fact that there was only a personal promise to pay a contingent fee, or a promise to pay some previously agreed-upon sum certain. The instant agreement did not provide, to paraphrase the language from *In re Hudson,* a sum over which the debtor could exert control by specifying which creditor shall become the transferee. In fact, the debtor had no right to disburse those funds, and had no right to possess those funds at any time. The only funds over which the debtor had a right to control were the funds left over in the Trust Account after the attorneys' fees had been paid.

the particular facts presented in the instant appeal justify a reversal of the decision of the Bankruptcy Court, there are also public policy questions which present themselves and deserve some attention as they also militate for reversal.

The rationale behind, and the historical development of, the use of contingent fee agreements stems from the need to open the judicial processes to those persons who may not otherwise be able to afford an attorney, based on an hourly billing system, should there be no recovery in their case. *See Recent Developments,* 60 Colum.L.Rev. 242, 244 nn. 3–6 and accompanying text (1960). A ruling that an attorney's fees paid prior to the initiation of any bankruptcy proceedings are avoidable as a prepetition preferential transfer could only serve to frustrate the important interest the government has in seeing that indigent litigants are able to obtain legal services to process, litigate and enforce

Therefore, the court holds that there was no antecedent debt as to the 50% fees plus costs on September 20, 1983 and therefore no avoidable preferential transfer.

A novel argument may be made that on June 16, 1984, the date on which the debtor endorsed the settlement check, a debt was incurred, and on June 29, 1984, the date on which the attorney paid his fee from the Trust Account, there was a transfer of property of the debtor for or on account of an antecedent debt, and that the debt was paid within the 90 day period provided for in Section 547(b). However, using the same analysis applied above, the claimant held an equitable assignment in that portion of the settlement covered by the contingent fee agreement. Therefore, there was (1) no transfer of *property of the debtor* as the debtor had no right to control or disburse; and (2) no antecedent debt, as the debtor had no liability on a claim as those terms are used in Section 547(b).

#### c. *Charging, Retaining or Possessory Lien*

The final argument Plaintiff Attorney Russell makes is that he alternatively holds either a charging, retaining or possessory lien. Because this Court holds that neither Section 544(a) nor Section 547(b) allows the bankruptcy trustee to avoid the $12,627,20 in fees retained by the plaintiff, resolution of this issue on this appeal is unnecessary.

their claims. Should this Court hold the present case to be an avoidable preference, the practical result may see attorney's questioning each potential contingent fee client's overall financial health prior to accepting the case. This result would be intolerable.

8. This Court's holding that an equitable *assignment* existed as of September 20, 1983 goes substantially further than the Bankruptcy Court's finding that an equitable *lien* existed as of that date. A "lien" is merely a charge or encumbrance on property, while an assignment is an actual transfer to another of property, or a right thereto. The difference for present purposes is that an equitable lien would have to be perfected as with any other creditor's lien, while an assignment does not give rise to the necessity to perfect.

CONCLUSION

For the reasons stated above, this Court holds that Section 544(a) of the Bankruptcy Code has no aplicability to this case because on the date of filing of the bankruptcy petition there was no debt due and owing by the debtor to the attorney. Further, this Court holds that Section 547(b) of the Bankruptcy Code will not allow classification of the plaintiff's action as an avoidable prepetition preferential transfer because (1) the portion of the settlement check covered by the particular language in the contingent fee agreement constituted an equitable assignment in favor of the attorney and, as such, was not the property of the debtor; and (2) there was no antecedent debt because the attorney-client contingent fee agreement constitutes an equitable assignment.

The ruling of the Bankruptcy Court below is reversed, and the case is remanded to that Court for further proceedings not inconsistent with this opinion.