In re A.W. LAWRENCE & COMPANY, INC. Debtor.

A.W. Lawrence & Company, Inc., Plaintiff,

v.

Sharon A. Burstein, Gleason, Dunn, Walsh & O'Shea, Lawrence Insurance Group, Inc., Lawrence Group, Inc., and Albert W. Lawrence, Defendants.

Bankruptcy No. 97–11300.
Adversary No. 97–91313.

United States Bankruptcy Court, N.D. New York.

May 4, 2006.

Nolan & Heller, LLP (Justin A. Heller, Esq. Of Counsel), Albany, New York, for Plaintiff.

Tuczinski, Cavlier, Burstein & Collua, P.C. (Richard L. Burstein, Esq. Of Counsel), Albany, NY, for Defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

United States District Court for the Northern District of New York (Hurd, D.J.), dated January 31, 2003 ("District Court Decision"). *See* Exhibit A of the Joint Exhibit Supplement, received July 27, 2005.[1] The District Court Decision vacated the Order entered on February 27, 2001 (Exhibit 2), and the judgment entered on March 5, 2001, of the United States Bankruptcy Court for the Northern District of New York (Connelly, B.J.) (Exhibit 4), as amended by the Order of September 12, 2001 (Exhibit 5). The District Court Decision also remanded the adversary proceeding for trial on the limited issue of whether Debtor/Plaintiff A.W. Lawrence & Co., Inc. ("AWLC") had an interest in a certain $50,000 payment made to Sharon

1. Unless otherwise indicated, all exhibits referenced herein are those included in the "Joint Exhibit Supplement" provided by the parties. The pages of the exhibits have been sequentially numbered by the parties as part of the record and will be referenced herein as "R." The District Court Decision is reported at 289 B.R. 20 (N.D.N.Y.2003). However, for purposes of this decision, the Court will refer to pages of the decision as provided by the parties at Exhibit A.

A. Burstein ("Burstein") on February 10, 1997, by check drawn on the personal account of Barbara C. Lawrence, the wife of Albert W. Lawrence ("A.W.Lawrence") (Exhibit 8).

On May 18, 2005, the Court signed an Order (Docket No. 355), approving a stipulation whereby the parties agreed to the use of submissions to the Court in lieu of trial. *See* Exhibit B. The matter was submitted for decision on July 18, 2005.

### JURISDICTIONAL STATEMENT

This Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a), (b)(1) and (b)(2)(E) and (H).

### FACTS

The Court will assume familiarity with the facts as set forth in the District Court Decision, as well this Court's Memorandum–Decision, Findings of Fact, Conclusions of Law and Order, dated September 12, 2001 ("September 2001 Decision") (Exhibit 5). Of relevance to the proceeding now before the Court, and by way of some background information, it notes the following:

On November 21, 1996, Burstein was awarded $502,619 in an action in New York State Supreme Court, Schenectady County ("State Court action"), as a result of her successful prosecution of a claim for wrongful termination against A.W. Lawrence,[2] Lawrence Groups, Inc. ("LGI") and/or Lawrence Insurance Group, Inc.

("LIG") (collectively, the "Lawrence entities").[3] *See* September 2001 Decision at 4 and Exhibit 10 at R. 76. "In mid-January 1997, Burstein and the Lawrence entities entered into a settlement agreement purporting to settle all outstanding claims, counterclaims, continued litigation and appeals." *See* September 2001 Decision at 4. "Pursuant to the settlement agreement, the Lawrence entities were to pay Burstein a total of $300,000 in satisfaction of the jury award to be paid in three installments as follows: $200,000 on or before January 17, 1997, $50,000 on or before February 10, 1997 and $50,0000 on or before February 24, 1997." *Id.* and Exhibit 11 at R. 78.

According to an "Agreement for the Sale of Vessel 'Escapade'," made and effective on February 10, 1997, AWLC sold the Escapade to Barbara C. Lawrence in exchange for the payment of $50,000. *See* Exhibit 18 at R. 440–442. The agreement was signed by A.W. Lawrence, as Chairman of the Board of AWLC and by Barbara C. Lawrence. *Id.* at R. 442. The agreement acknowledges receipt of the $50,000. *Id.* at R. 440.

According to the affidavit of James P. Faughnan, Jr., who was appointed President of AWLC on April 11, 1997, in exchange for the delivery of the $50,000 check "AWL & Co. transferred or purported to transfer a certain 52 foot sailboat known by the vessel name Escapade, Official Number 903946 to Barbara C. Lawrence."[4] *See* Exhibit 13 at R.149 at ¶ 13.

---

**2.** In a separate decision by this Court, dated August 25, 2000, the Court determined that the amount of $502,619 was nondischargeable as to A.W. Lawrence. *See Burstein v. Lawrence (In re Lawrence)*, Case No. 97–11263, Adv. Pro. No. 97–91293, slip op., at 8 (Bankr.N.D.N.Y. Aug. 25, 2000).

**3.** The judgment was not against AWLC.

**4.** AWLC listed the Escapade as an asset of personal property with a value of $110,000 on Schedule B of its petition (Case No. 97–11300). *See* Exhibit 19. According to the General Index or Abstract of Title of the U.S. Department of Transportation, U.S. Coast Guard, as of May 1, 1999, title to the Escapade remained in the name of AWLC, having been transferred by Barbara C. Lawrence and

In his affidavit, Faughnan acknowledged that AWLC did not deposit the check into any of its bank accounts. Instead, "at the direction of either Albert W. Lawrence (himself a judgment debtor on the above Judgment) or Randall Ezick, Esq. (counsel for the Lawrence Group), Mr. Diana endorsed said check as follows: 'Pay to the order of Gleason, Dunn, Walsh & O'Shea and Sharon A. Burstein.'(Diana Tr., Exhibit 'E', pages 49–51)." *Id.* at ¶ 14.

As previously noted by this Court in its September 2001 Decision, "Barbara C. Lawrence, a director of [AWLC], drew a check on her personal 'Active Assets Account' with Dean Witter Reynolds, Inc. in the amount of $50,000 made payable to [AWLC].... Rather than being deposited into one of [AWLC's] corporate accounts, the $50,000 check was simply indorsed by Peter G. Diana ["Diana"], the 'Comptroller of Financial Reporting' of [AWLC], over to Burstein and Gleason, Dunn, Walsh & O'Shea ('GD WO'), Burstein's attorneys in the state court wrongful termination suit, representing the Lawrence entities' second scheduled payment under the negotiated settlement." September 2001 Decision at 5.

According to Diana, who was deposed on July 21, 1998, he was directed by A.W. Lawrence to pick up a check from Barbara C. Lawrence. *See* Exhibit 14, R. 202. Diana recalled that A.W. Lawrence had expressed some urgency in having the check picked up and that it involved some sort of legal action. *See* Exhibit 15, R. 233. He did not believe that it was a payment of a debt of AWLC, however. Rather, he believed it was a debt of either LGI or A.W. Lawrence, personally. *Id.* at R. 234. Diana further testified that the check, although made payable to AWLC, had not been recorded in the general ledger of AWLC. *Id.* at R. 235.

With respect to the $50,000 check drawn on Barbara C. Lawrence's account, Mary Connors, controller of operations for AWLC, at a deposition conducted on August 19, 1998, indicated that "Mrs. Lawrence at various times would either loan us money or write us a check for things that they might have owed us...." *See* Exhibit 17 at R. 338. She acknowledged that no one had advised her that the $50,000 check was issued by Barbara C. Lawrence in consideration for her purchase of the Escapade. *Id.* at R. 339.

On February 28, 1997, AWLC and various related entities, including LGI, A.W. Lawrence and Barbara C. Lawrence filed for protection under chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). On June 12, 1997, AWLC commenced the instant adversary proceeding (Adv.Pro.97–91313) against Burstein, GDWO, LIG, LGI and A.W. Lawrence seeking recovery of the $50,000 payment to Burstein on February 10, 1997, under theories of fraudulent conveyance and/or preferential transfer.[5]

On May 28, 1997, AWLC commenced an adversary proceeding against Barbara C. Lawrence seeking to avoid the transfer to her of a sailboat known by the vessel name "The Escapade" as a fraudulent transfer

---

A.W. Lawrence to AWLC on December 19, 1988. *See* Exhibit 31. In its responses to Burstein's Request for Admission, AWLC admitted that it continued to maintain and pay the insurance on the Escapade after February 10, 1997. *See* Exhibit C at "o." It also admitted that there had been no bill of sale issued to Barbara C. Lawrence. *Id.* at "z." The

Escapade, identified as a "52' cruising ketch," was also listed as an asset of personal property on Schedule B of Barbara C. Lawrence's petition with a value of $50,000 (Case No. 97–11258).

5. On September 18, 1997, a default judgment was issued against LIG.

("Escapade adversary proceeding") (Adv. Pro.97–91291). On or about June 9, 1997, Barbara C. Lawrence interposed counterclaims seeking recovery of the $50,000 payment to Burstein on February 10, 1997, and/or recoupment or setoff in the event the Court ordered turnover of the Escapade. In April 1998 U.S. Bankruptcy Judge Barry S. Schermer, who originally presided over this adversary proceeding, authorized the sale of the Escapade and ordered that the resulting proceeds, some $35,616.13, be placed in escrow pending resolution of the Escapade adversary proceeding. In August of 1999 AWLC and Barbara C. Lawrence settled the Escapade adversary proceeding. *See* Exhibit 24. The parties stipulated in the settlement that the $50,000 check tendered by Barbara C. Lawrence to AWLC on February 10, 1997, was, in fact, in consideration of the transfer or "purported" transfer of the Escapade to Barbara C. Lawrence. *Id.* at R. 713. AWLC and Barbara C. Lawrence agreed to apportion equally between them the proceeds of the sale of the vessel, as well as any recovery AWLC might obtain as a result of the prosecution of the instant adversary proceeding. *See* September 2001 Decision at Footnote 1 and Exhibit 24.

In September 1999 AWLC filed a motion *in limine* in the adversary proceeding now under consideration "seeking to exclude from trial all evidence except for that pertaining to whether AWLC was insolvent at the time the subject transfer was made ... [and] contended that the issue [of whether AWLC had an ownership interest in the $50,000] had been definitively resolved in its favor by virtue of the above settlement agreement...." District Court Decision at 4. At the hearing on AWLC's motion on October 1, 1999, U.S. Bankruptcy Judge John J. Connelly granted AWLC's motion and stated that

there was a dispute in this courtroom as to this issue about this boat. There's been a stipulation and agreement—a settlement event—dispute between those two people who made a claim to it. I—whatever your—whatever you are trying to say here is not going to be in the case, so I'm not—just disabuse yourself of that idea that you're going to litigate the title of this boat.... It's a done deal, counsel.

*See* Exhibit 25 at R. 753A. Burstein filed a notice of Appeal to the District Court (Exhibit 1) from the February 8, 2001 Memorandum–Decision of Judge Connelly (Exhibit 3), which found, following a trial on June 16, 2000, that AWLC had met its burden of establishing insolvency at the time of the transfer of $50,000 to Burstein, as well as from Judge Connelly's Order of February 23, 2001 (Exhibit 2) and the February 27, 2001 Judgment against Burstein in the amount of $41,250, plus interest and costs (Exhibit 4), as amended by this Court's September 2001 Decision, reducing the amount to $33,333, plus interest and costs (Exhibit 5).

In the District Court Decision, U.S. District Judge David N. Hurd found that at the trial before Judge Connelly, "Burstein was not permitted to offer any evidence regarding the ownership of the sailboat or whether AWLC otherwise had an interest in the $50,000. The only issue considered at trial was whether or not AWLC was insolvent at the time." District Court Decision at 5. He concluded that

the Bankruptcy Court improperly relied upon the settlement in Adversary Proceeding II to conclusively establish that AWLC had an interest in the $50,000 at the time of the transfer to Burstein. The entire circumstances of the settlement over two years after the transfer, which included a condition (i.e. AWLC and Barbara Lawrence to split any re-

covery from Burstein in this adversary proceeding) that provided a strong motive for the settling parties to fabricate, can hardly be considered conclusive. This matter must, therefore, be remanded for a determination based upon all of the evidence, whether AWLC had an interest in the $50,000 at the time it transferred same to Burstein.

*Id.* at 10.

## DISCUSSION

■■■■ Code § 548 permits avoidance of a transfer if it is established that the debtor had an interest in the property, that a transfer of that interest occurred within one year [6] of the filing of the petition, that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof, and that the debtor received less than reasonable equivalent value in exchange for such transfer. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). "An interest in property, for purposes of § 548, includes any interest of the debtor that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer." *Matter of Besing*, 981 F.2d 1488, 1493 (5th Cir.1993). With respect to actions to avoid transfers of property, "any funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property and any transfers that diminish that property are subject to avoidance." *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1181 (11th Cir.1987). However, the court in *Nordberg* drew a distinction between the standards for establishing control by the debtor when one

is considering whether the transfer of funds was preferential pursuant to Code § 547 or fraudulent pursuant to Code § 548, noting that "[t]he presumption that the debtor controlled the payment is not similarly compelling where funds provided by a third party are transferred to a noncreditor." *Id.*

In this regard, the court in *Nordberg* addressed what it determined to be an issue of first impression, namely establishing "a framework for determining when funds provided to a debtor by a third party become property of the debtor so that an allegedly fraudulent transfer of the funds to a noncreditor is subject to avoidance under 11 U.S.C. § 548." *Id.* at 1180. The court in *Nordberg* concluded that

> where a transfer to a noncreditor is challenged as fraudulent, more is necessary to establish the debtor's control over the funds than the simple fact that a third party placed the funds in an account of the debtor with no express restrictions on their use. In determining whether the debtor had control of funds transferred to a noncreditor, the court must look beyond the particular transfers in question to the entire circumstance of the transaction.

*Id.* at 1181–82. It is within this framework that this Court will examine the facts and issues now before it on remand pursuant to the District Court Decision. The facts of particular relevance are as follows:

1. Burstein obtained a judgment in the amount of $502,619 against the "Lawrence entities" on November 21, 1996 in connection with the State Court action.

---

**6.** Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), signed into law on April 20, 2005, and made applicable to cases filed after October 16, 2005, Code § 548 was amended to allow avoidance of a transfer of an interest of a debtor that occurred within *two* years of the filing of the petition. This provision, however, did not take effect until one year after the date of the enactment of BAPCPA, to wit: April 17, 2006.

2. In mid-January 1997, the parties to the State Court action entered into a settlement pursuant to which the Lawrence entities agreed to pay a total of $300,000 in three installments: $200,000 on or before January 17, 19997, $50,000 on or before February 10, 1997, and $50,000 on or before February 24, 1997.

3. According to an "Agreement for the Sale of Vessel 'Escapade'" AWLC sold the Escapade to Barbara C. Lawrence, a member of the Board of Directors of AWLC, along with her husband A.W. Lawrence, for $50,000, effective February 10, 1997. According to the affidavit of AWLC's president, reference is made to the transfer or "purported" transfer of the Escapade to Barbara C. Lawrence in exchange for the delivery of the $50,000 check.

4. The check for $50,000, dated February 10, 1997, was written on the personal account of Barbara C. Lawrence, made payable to "A.W. Lawrence & Co., Inc." (Exhibit 8)

5. Barbara C. Lawrence had a practice of writing checks to AWLC to cover shortfalls.

6. The check was not deposited into any of the accounts of AWLC. Instead, at the direction of either A.W. Lawrence or Randall Ezick, Esq. ("Ezick"), the check was picked up by Diana from Barbara C. Lawrence on February 10, 1997, and endorsed by him, on behalf of AWLC, payable to Burstein and GDWO, and delivered to the offices of GDWO that day.

7. Title to the Escapade was never transferred to Barbara C. Lawrence and no bill of sale was issued to her on February 10, 1997. In addition, there was no evidence of sales tax ever having been paid and no formal approval by AWLC's Board of Directors of the sale of the corporate asset. AWLC continued to maintain and pay the insurance on the Escapade after February 10, 1997.

8. On February 28, 1997, AWLC, LGI, A.W. Lawrence and Barbara C. Lawrence filed chapter 11 petitions. The Escapade was listed on Schedule B of both AWLC's and Barbara C. Lawrence's petitions as an item of personal property.

Based on these facts, the Court must determine whether AWLC has met its burden of establishing that it had an interest in the $50,000 ultimately paid to Burstein and GDWO such that the transfer may be avoided by AWLC pursuant to Code § 548. In this regard, AWLC takes the position that whether or not the transfer of the ownership in the Escapade to Barbara C. Lawrence was completed is not important. Instead, it asserts that what is important is whether it had an interest in the $50,000 check issued by Barbara C. Lawrence to AWLC on February 10, 1997. AWLC asserts it was a holder of the check and had the necessary intent to control its disposition, as established by Diana's endorsement of it at the direction of A.W. Lawrence or Ezick, and not at the direction of Barbara C. Lawrence. It is AWLC's position that Burstein has not met her burden of establishing that AWLC was nothing more than a "mere conduit" for the funds ultimately paid to her.

The parties acknowledge that AWLC has the burden of proof to establish its interest in the $50,000 transferred to Burstein and GDWO. *See* Stipulation, dated May 13, 2005 (Exhibit B). In *Nordberg* the funds had been deposited into a special account recently opened by the debtor, under a name it no longer used, and closed shortly thereafter. *Nordberg,*

813 F.2d at 1182. The court found that the overwhelming evidence supported its conclusion that the debtor had not controlled the transfer, despite the fact that the transfer had been ordered by the debtor's president, and that the funds were not property of the debtor. "To conclude otherwise would confer on the creditors a windfall at the expense of the named defendants who, as the creditor trustee admits, were innocent of any intent to diminish the assets of the debtor." *Id.*

■ In the matter under consideration herein, neither the check for $50,000, nor cash in that amount, passed through AWLC's bank account. Instead, it was endorsed directly over to Burstein and GDWO on February 10, 1997, the deadline for payment of the second installment under the terms of the settlement agreement executed the previous month on January 17, 1997. While AWLC makes the argument that it was a holder of the check, a check does not convey to its holder a property interest in the funds against which it was drawn. *See In re Hudson Valley Quality Meats, Inc.*, 29 B.R. 67, 72 (Bankr. N.D.N.Y.1982).

Since the check was never deposited into AWLC's bank account, the funds ultimately paid to Burstein did not diminish the monies available to pay its creditors. As acknowledged by the court in *Brown v. First Nat'l Bank of Little Rock, Ark. (In re Ark–La Materials, Inc.)*, 748 F.2d 490 (8th Cir.1984), this conclusion might have been different if the evidence supported the actual transfer of ownership in the Escapade by AWLC to Barbara C. Lawrence. *Id.* at 491. Such a transfer arguably would have resulted in a diminution of AWLC's estate, as apparently alleged in

the adversary proceeding commenced by AWLC against Barbara C. Lawrence on May 28, 1997, which was ultimately settled in August 1999.[7]

However, the evidence supports a finding that the alleged transfer of the Escapade was indeed "purported." The legal title remained in AWLC and it was AWLC that listed it in its schedules as an item of personal property. Mary Connors, AWLC's controller of operations, knew nothing of any transfer of the vessel. Indeed, Diana confirmed his understanding that the check for $50,000 was not for the purchase of the Escapade but rather, it was paid to Burstein and GDWO in connection with some sort of legal action. The fact that the check was issued to AWLC by Barbara C. Lawrence and used to pay the obligations of the Lawrence entities, including her husband, apparently was not out of the ordinary according to Connors' testimony. AWLC argues that the endorsement of the check to Burstein and GDWO occurred at the direction of A.W. Lawrence/Ezick and establishes that AWLC controlled the disposition of the check However, it is just as reasonable to conclude that the endorsement of the check was at the direction of A.W. Lawrence, not in his capacity as Chairman of the Board of Directors of AWLC, but in his individual capacity as a judgment debtor of Burstein. This is particularly true given the fact that the check in the amount of $50,000 had been issued and endorsed on February 10, 1997, the same day that the Lawrence entities, including A.W. Lawrence, were obligated to make the payment of $50,000 to Burstein under the terms of the settlement of the State Court action. AWLC was not one of the "Law-

---

7. In the District Court Decision, Judge Hurd commented that the fact that the settlement provided for a split of any monies recovered in the adversary proceeding herein between AWLC and Barbara C. Lawrence was "suggestive of collusion between Barbara Lawrence and AWLC." *See* District Court Decision at 9, Footnote 3 (Exhibit A).

rence entities", as identified herein, and was under no obligation to pay Burstein.

The Court, having examined the entire circumstances of the transaction, concludes that AWLC failed to establish that it had an interest in the $50,000 check endorsed over to Burstein and GDWO sufficient to form a basis for avoidance of the transfer that occurred on February 10, 1997, pursuant to Code § 548.[8]

IT IS SO ORDERED.

---

8. This Decision is intended to addresses the issue remanded to this Court by the District Court. This Court recognizes, however, that it may not be dispositive of the entire adversary proceeding.